# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| THE ASPEN CLUB & SPA, LLC | ) | Case No. 19-14158-JGR |
| EIN: 84-1581963 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | )_____ | |
| In re | ) | |
| | ) | |
| ASPEN CLUB REDEVELOPMENT | ) | Case No. 19-14200-JGR |
| COMPANY, LLC | ) | |
| EIN: 46-5472246 | ) | Chapter 11 |
| | ) | |
| Debtor-in-Possession | ) | **(Jointly Administered Under** |
| | ) | **Case No. 19-14158-JGR)** |

---

**MODIFIED JOINT SECOND AMENDED PLAN OF REORGANIZATION OF THE ASPEN CLUB & SPA, LLC, AND ASPEN CLUB REDEVELOPMENT COMPANY, LLC, PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, DATED SEPTEMBER 16, 2019; AMENDED NOVEMBER 22, 2019 AND JANUARY 28, 2020**

---

James T. Markus, #25065
John F. Young, #26989
Matthew T. Faga, #41132
William G. Cross, #52952
Markus Williams Young & Hunsicker LLC
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203
Telephone (303) 830-0800
Facsimile (303) 830-0809
jmarkus@markuswilliams.com
jyoung@markuswilliams.com
mfaga@markuswilliams.com
wcross@markuswilliams.com

*Counsel for the Debtors-in-Possession*

# CONTENTS

INTRODUCTION ............................................................................................................... 1

ARTICLE I  DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION
OF TIME ............................................................................................................................... 2

    A.    Scope of Definitions ................................................................................................. 2

    B.    Definitions ................................................................................................................ 2

ARTICLE II  TREATMENT OF ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIM,
PROFESSIONAL CLAIMS, AND PRIORITY TAX CLAIMS ............................................... 17

    2.1    **Administrative Claims.** .................................................................................... 17

    2.2    **DIP Facility Allowed Claim.** ............................................................................ 18

        (a)    **DIP Facility Claim.** ..................................................................................... 18

        (b)    **Payment of DIP Facility Claim.** ................................................................. 18

    2.3    **Professional Claims.** ....................................................................................... 18

        (a)    **Final Fee Applications.** ............................................................................... 18

        (b)    **Payment of Allowed Professional Claims.** ................................................ 18

        (c)    **Post-Confirmation Date Retention.** ........................................................... 19

    2.4    Priority Tax Claims. ........................................................................................... 19

ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
INTERESTS ........................................................................................................................ 19

    3.1    **Classification of Claims and Interests.** .......................................................... 19

ARTICLE IV  PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS ....... 20

    4.1    **Allowed Mechanics Lien Secured Claims (Classes 1A through 1NN)** .................... 20

    4.2    **Allowed Claim of GPIF (Class 2)** ................................................................... 22

    4.3    **Allowed Claim of Revere (Class 3)** ................................................................ 24

    4.4    **EB5 Claims (Class 4)** ....................................................................................... 24

    4.5    **Letter of Credit Claims (Class 5)** .................................................................... 25

    4.6    **Mezzanine Debt Claims (Class 6)** ................................................................... 25

    4.7    **Other Priority Claims (Class 7)** ...................................................................... 26

    4.8    **General Unsecured Claims (Class 8)** ............................................................... 26

    4.9    **Subordinated Claims (Class 9)** ....................................................................... 27

    4.10    **Interests (Class 10)** ....................................................................................... 27

ARTICLE V  ACCEPTANCE ............................................................................................ 27

    5.1    **Classes Entitled to Vote.** ................................................................................ 27

i

**5.2**   **Acceptance by Impaired Classes.** ................................................................. 27

**5.3**   **Elimination of Classes.** ....................................................................... 27

**5.4**   **Deemed Acceptance if No Votes Cast.** ........................................... 28

**5.5**   **Cramdown.** ........................................................................................... 28

**ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN** .................................. **28**

**6.1**   **General Settlement of Claims and Interests.** ................................. 28

**6.2**   **No Substantive Consolidation.** ......................................................... 28

**6.3**   **Exit Financing, Restructuring Transactions and Sales of Property Free and Clear.** 28

**6.4**   **Sources of Cash for Plan Distributions.** ......................................... 30

**6.5**   **Exemptions from Securities Act Registration Requirements.** ................................ 30

**6.6**   **Cancellation of Securities, Instruments, Certificates and Agreements.** .................. 30

**6.7**   **Issuance and Distribution of New Securities; Execution of Plan Documents.** ........ 31

**6.8**   **Continued Company Existence and Equity Interests in Reorganized Debtors.** ...... 31

**6.9**   **Articles of Organization and Bylaws.** ............................................. 32

**6.10**   **Directors and Officers of Reorganized Debtors.** ......................... 32

**6.11**   **Corporate Action.** ............................................................................... 32

**6.12**   **Effectuating Documents; Further Transactions.** ........................... 32

**6.13**   **Employment, Retirement, Indemnification and Other Agreements and Employee Compensation Programs.** ..................................................................... 33

(a)   **Employment Agreements** ........................................................... 33

(b)   **Other Incentive Plans and Employee Benefits.** ........................... 33

**6.14**   **Preservation of Causes of Action.** .................................................. 33

**6.15**   **Reservation of Rights.** ........................................................................ 34

**6.16**   **Exemption from Certain Transfer Taxes and Recording Fees.** ............................. 34

**6.17**   **Insured Claims.** .................................................................................. 34

**6.18**   **Intercompany Account Settlement.** n. ............................................ 34

**6.19**   **Private Company.** ................................................................................ 34

**ARTICLE VII INTENTIONALLY OMITTED** ......................................................... **34**

**ARTICLE VIII   UNEXPIRED LEASES AND EXECUTORY CONTRACTS** .................. **35**

**8.1**   **Rejection of Executory Contracts and Unexpired Leases.** ...................................... 35

(a)   **Automatic Rejection.** ................................................................. 35

(b)   **Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.** ........................................................................ 35

(c) **Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.**................................................................................................................................ ................................................................................................................................ 35

(d) **Reservation of Rights.** ...................................................................................... 36

**8.2 Assumption of Executory Contracts and Unexpired Leases.** .................................. 36

(a) **Modifications, Amendments, Supplements, Restatements, or Other Agreements.** 36

(b) **Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.**............................................................................................................ 36

**8.3 Indemnification Provisions.**........................................................................................ 37

**8.4 Insurance Policies.** .................................................................................................... 37

**8.5 Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases.**................................................................................................ 37

(a) **Cure Notice.** ..................................................................................................... 38

(b) **Cure Objections.** .............................................................................................. 38

(c) **Hearing with Respect to Objections.** ............................................................. 39

(d) **Reservation of Rights.**..................................................................................... 39

**8.6 Contracts, Intercompany Contracts, and Leases Entered into After the Petition Date.** 39

**8.7 General Reservation of Rights.** ............................................................................... 39

**ARTICLE IX   PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** ....................................................................................................................... **39**

**9.1 Determination of Claims and Interests.** ................................................................. 39

**9.2 Claims Administration Responsibility.**.................................................................. 40

**9.3 Objections to Claims.** ............................................................................................. 40

**9.4 Disallowance of Claims.** ......................................................................................... 41

**9.5 Estimation of Claims.** ............................................................................................. 41

**9.6 No Interest on Disputed Claims.**............................................................................ 41

**9.7 Amendments to Claims.**.......................................................................................... 42

**ARTICLE X  PROVISIONS GOVERNING DISTRIBUTIONS**........................................... **42**

**10.1 Distributions of Interests to Holders of Allowed Lien Deficiency Claims and Allowed General Unsecured Claims.** ..................................................................... 42

**10.2 Time of Distributions.** ............................................................................................ 42

**10.3 Distribution Agent.**................................................................................................. 42

**10.4 Currency.** ................................................................................................................. 42

**10.5 Distributions on Account of Claims Allowed as of the Effective Date.**................. 42

10.6    **Distributions on Account of Claims Allowed After the Effective Date.** .................. 43

 (a)    **No Distributions Pending Allowance.**. ........................................................ 43

 (b)    **Distributions After Allowance.** ................................................................... 43

 (c)    **Special Rules for Distributions to Holders of Disputed Claims.** ......................... 43

10.7    **Delivery of Distributions.** ........................................................................... 44

 (a)    **Record Date for Distributions.** ................................................................... 44

 (b)    **Allowed Claims**. ....................................................................................... 44

 (c)    **Undeliverable Distributions.** ....................................................................... 44

 (d)    **Reversion.** ............................................................................................... 44

 (e)    **De Minimis Distributions**. ........................................................................... 45

 (f)    **Fractional Distributions.** ............................................................................ 45

10.8    **Surrender of Securities or Instruments.** ........................................................ 45

10.9    **Compliance Matters.** ................................................................................. 45

10.10   **Claims Paid or Payable by Third Parties.** ...................................................... 46

 (a)    **Claims Paid by Third Parties**. ..................................................................... 46

 (b)    **Claims Payable by Insurance Carriers.** ......................................................... 46

 (c)    **Applicability of Insurance Policies.** .............................................................. 46

10.11   **Setoffs.** ................................................................................................... 46

10.12   **Allocation of Plan Distributions Between Principal and Interest.** ....................... 47

**ARTICLE XI  EFFECT OF THE PLAN ON CLAIMS AND INTERESTS** ......................... 47

11.1    **Vesting of Assets.** ...................................................................................... 47

11.2    **Discharge of the Debtors**. ............................................................................ 47

11.3    **Compromises and Settlements.** .................................................................... 48

11.4    **Exculpation and Limitation of Liability.** ........................................................ 48

11.5    **Exclusions and Limitations on Exculpation, Indemnification, and Releases.** ........ 49

11.6    **Injunction.** .............................................................................................. 49

11.7    **Subordination Rights.** ............................................................................... 49

11.8    **Protection Against Discriminatory Treatment.** ............................................... 50

11.9    **Recoupment.** ........................................................................................... 50

11.10   **Release of Liens.** ...................................................................................... 50

11.11   **Reimbursement or Contribution.**. ................................................................ 50

**ARTICLE XII  CONDITIONS PRECEDENT** ........................................................ 50

12.1    **Conditions to Confirmation.**: ...................................................................... 50

12.2    **Conditions to the Effective Date of the Plan.** ................................................. 51

iv

**12.3   Waiver of Conditions Precedent.** ....................................................................... 52

**12.4   Notice of Effective Date.** ................................................................................... 52

**12.5   Effect of Non-Occurrence of Conditions to Consummation.** ................................. 52

**ARTICLE XIII  RETENTION OF JURISDICTION** .......................................................... **52**

**ARTICLE XIV  MISCELLANEOUS PROVISIONS** .......................................................... **54**

**14.1   Binding Effect.** ................................................................................................... 54

**14.2   Payment of Statutory Fees.** ............................................................................... 54

**14.3   Payment of Certain Additional Professional Fees.** .............................................. 54

**14.4   Modification and Amendments.** ......................................................................... 55

**14.5   Confirmation of the Plan.** .................................................................................. 55

**14.6   Additional Documents.** ...................................................................................... 55

**14.7   Revocation, Withdrawal, or Non-Consummation.** ............................................... 55

**14.8   Notices.** ............................................................................................................ 55

**14.9   Term of Injunctions or Stays..** ........................................................................... 56

**14.10  Closing of Chapter 11 Cases and Final Decree.** ................................................. 56

**14.11  Governing Law.** ................................................................................................ 56

**14.12  Entire Agreement.** ............................................................................................ 57

**14.13  Severability.** ..................................................................................................... 57

**14.14  No Waiver or Estoppel.** ..................................................................................... 57

**14.15  Conflicts.** ......................................................................................................... 57

## INTRODUCTION

The Aspen Club & Spa, LLC, and Aspen Club Redevelopment Company, LLC, as debtors and debtors-in-possession hereby propose the following joint second amended plan of reorganization, which Plan provides for the resolution of outstanding Claims against, and equity Interests in, the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code. The Debtors, as proponents of the Plan, request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Although the Debtors are presently being jointly administered for procedural purposes, their estates have not been substantively consolidated. For the avoidance of doubt, the Debtors' non-Debtor subsidiaries and affiliates did not file bankruptcy petitions and are not subject to the Chapter 11 Cases or the Plan.

In summary, but subject to the specific details as outlined herein, the Plan provides for (i) the reorganization of the Debtors, (ii) the emergence of the Debtors from the Chapter 11 Cases as the Reorganized Debtors, and (iii) distributions to be made to Holders of Allowed Claims, and equity Interest in, the Debtors as provided for under the Plan.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Disclosure Statement relating to the Plan was approved by the Bankruptcy Court in the Disclosure Statement Final Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, Project, business, and operations, (b) the Projections for the Reorganized Debtors' future operations, (c) summary of significant events which have occurred to date in the Bankruptcy Case, (d) a summary of the means of implementing and funding the Plan, (e) the procedures for voting on the Plan, (f) a summary and analysis of the Plan and distributions under the Plan, and (g) risk factors associated with the Plan.

No materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Final Order and Ballot, have been approved by the Debtors or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTORS WHO ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to the restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article XIV of the Plan, the Debtors expressly reserve their rights to alter, amend, modify, revoke, or withdraw the Plan, one or more times, prior to the Effective Date.

IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN

THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF CLAIMS AND INTERESTS, AND THE DEBTORS RECOMMEND THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE REORGANIZED DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST, OR INTEREST IN, THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

A.      Scope of Definitions

For purposes of the Plan, except as expressly provided otherwise or unless the context requires otherwise, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

B.      Definitions

1.1      **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the business of the Debtors, including the DIP Facility Claim, wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, Section 503(b)(9) Claims, Professional Claims, and all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court. In no event shall any Claim set out in a Proof of Claim or any application, motion, request or other Bankruptcy Court approved pleading be deemed to be an Allowed Administrative Claim without further order of the Bankruptcy Court.

1.2      **"Administrative Claims Bar Date"** means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to DIP Facility

Allowed Claim and Professional Claims, which shall be subject to the provisions of Section 2.2 and 2.33 hereof, as applicable.

1.3     **"Affiliates"** has the meaning ascribed to such term by Section 101(2) of the Bankruptcy Code.

1.4     **"Allowed"** means, for distribution purposes, a Claim or Interest, or any portion thereof, or a particular Class of Claims or Interests (a) that has been allowed by an Order of the Bankruptcy Court (or such other court as the Reorganized Debtor and the Holder of such Claim or Interest agree may adjudicate such Claim or Interest and objections thereto), (b) which is Scheduled as liquidated and noncontingent (other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed) but shall only be deemed enforceable and payable in the amount and to the extent such Claim is Scheduled in a dollar amount that is liquidated and noncontingent, (c) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (d) that is expressly allowed in a liquidated amount pursuant to this Plan.

1.5     **"Allowed Secured Claim Amount"** means the dollar amount of an Allowed Claim asserted by the Holder of a Secured Claim and which amount shall be equal to the dollar value of such Allowed Secured Claim as agreed to by the Debtors or which dollar value shall be determined by the Bankruptcy Court in accordance with the provisions of Section 506(a)(1) of the Bankruptcy Code.

1.6     **"Avoidance Actions"** means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtors and their recovery, subordination, or other remedies that may be brought by and on behalf of the Debtors and their estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Section 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

1.7     **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect  on the date hereof but, with respect to amendments to the Bankruptcy Code subsequent to commencement of the Chapter 11 Cases, only to the extent that such amendments were made expressly applicable to bankruptcy cases which were filed as of the enactment of such amendments.

1.8     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Colorado or such other court as may have jurisdiction over the Chapter 11 Cases.

1.9     **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of title 28 of the Bankruptcy Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of title 28 of the Bankruptcy Code, as applicable to the Chapter 11 Cases or

proceedings therein, (c) the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, and (d) any standing Final Orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to the Chapter 11 Cases or proceedings herein, as the case may be.

1.10    **"Bar Date"** means the deadline set by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing a Proof of Claim in the Chapter 11 Cases, as the context may require.

1.11    **"Bar Date Order"** means the order entered by the Bankruptcy Court on May 23, 2019 (Docket No. 36).

1.12    **"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day one which commercial banks in Denver, Colorado are required or authorized to close by law.

1.13    **"Cash"** means legal tender of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtors drawn on a domestic bank and equivalents thereof.

1.14    **"Causes of Action"** means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, in contract or in tort, directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Action, and actions against any Entity for failure to pay for products or services provided or rendered by any Debtor, all claims, suits or proceedings relating to enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' or the Reorganized Debtors' businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.15    **"Certificate"** means any instrument evidencing a Claim or an Interest.

1.16    **"Chapter 11 Cases"** means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court, jointly administered under Case Number 19-14158-JGR.

1.17    **"Claim"** means a claim against the Debtors, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code, or an Administrative Claim, as applicable.

1.18 **"Claims Estimation Motion"** means any motion filed by the Debtors seeking determination or estimation, for the purpose of setting a reserve, of the validity, priority, status, extent and/or amount of any Claim or Claims.

1.19 **"Claims Objection Deadline"** means, as applicable (except for Administrative Claims), (a) the day that is the later of the first Business Day that is at least 180 days after the Effective Date or (b) such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors without further notice to parties-in-interest.

1.20 **"Class"** means a category of Holders of Claims or Interests classified together pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as described in Article III of the Plan.

1.21 **"Confirmation"** means the entry, within the meaning of Bankruptcy Rules 5003 and 9012, of the Confirmation Order, subject to all conditions specified in Section 12.1 having been satisfied or waived, in accordance with the terms herein.

1.22 **"Confirmation Date"** means the date on which Confirmation occurs.

1.23 **"Confirmation Hearing"** means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.24 **"Confirmation Order"** means the order of the Bankruptcy Court entered in the Chapter 11 Cases confirming the Plan under Section 1129 and other applicable Sections of the Bankruptcy Code, which order shall be in form and substance acceptable to the Exit Lender, as such order may be amended, modified or supplemented with the consent of the Exit Lender.

1.25 **"Creditor"** has meaning ascribed to such term in Section 101(10) of the Bankruptcy Code.

1.26 **"Cure"** means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to Section 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract or Unexpired Lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.27 **"Cure Notice"** means the notice as described and defined in Section 8.5(a).

1.28    **"Cure Objection Deadline"** shall mean the deadline set forth in the Cure Notice for the filing and service of an objection to the Cure described in the Cure Notice.

1.29    **"Debtors"** means, together, (i) The Aspen Club & Spa, LLC, debtor and debtor-in-possession under Case Number 19-14158-JGR of the United States Bankruptcy Code for the District of Colorado, and (ii) Aspen Club Redevelopment Company, LLC, debtor and debtor-in-possession under Case Number 19-14200-JGR of the United States Bankruptcy Code for the District of Colorado.

1.30    **"DIP Credit Agreement"** means that certain Loan Agreement, between the Debtors, and the DIP Lender, dated as of July 1, 2019, as has been or may be amended, restated, supplemented or otherwise modified from time to time.

1.31    **"DIP Facility"** means the debtor-in-possession secured financing facility, consisting of a term loan facility, provided to the Debtors by the DIP Lender pursuant to the DIP Credit Agreement as authorized by the Bankruptcy Court pursuant to the DIP Facility Order, as may be amended or modified from time to time.

1.32    **"DIP Facility Claim"** means any Claim arising under, derived from, based upon, or as a result of the DIP Facility.

1.33    **"DIP Facility Order"** means, collectively, (a) the Final Order that was entered by the Bankruptcy Court on June 25, 2019 (Docket No. 178), authorizing and approving the DIP Facility and the agreements related thereto, and (b) any and all Final Orders entered by the Bankruptcy Court authorizing and approving amendments or modifications to the DIP Credit Agreement or either of the Final Orders described in the foregoing clause (a). The term "DIP Facility Order" includes any and all annexes, exhibits, documents, etc. attached thereto.

1.34    **"DIP Lender"** means EFO Financial Group, LLC, a Florida limited liability company, its participants and/or assigns, and the Lender under the DIP Credit Agreement and the Holder of the DIP Facility Claim.

1.35    **"Disallowed"** means either (a) a Claim, or any portion thereof, that has been disallowed by an order of the Bankruptcy Court or a settlement, or as provided in the Plan, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a Proof of Claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a Proof of Claim bar date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.36    **"Disclosure Statement"** means the disclosure statement or any supplements thereto (including the Plan Supplement and all schedules thereto or referenced therein) that relates to the Plan, as such disclosure statement may be amended, modified, or supplemented

from time to time in accordance with the terms therein, as submitted and filed by the Debtors pursuant to Sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017 and as approved by the Bankruptcy Court in the Disclosure Statement Order, which Disclosure Statement (and all Exhibits thereto) shall be in form and substance acceptable to the Exit Lender, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time, with the consent of the Exit Lender.

1.37    **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement, as containing, among other things, "adequate information" as required by Section 1125 of the Bankruptcy Code and solicitation procedures related thereto including, but not limited to, setting various deadlines in connection with Conformation of the Plan, which Final Order shall be in form and substance acceptable to the Exit Lender.

1.38    **"Disputed"** means with respect to a Claim, (a) any Claim as to which any Debtor or other parties-in-interest in accordance with applicable law have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by any Debtor, or other parties-in-interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) any Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) any Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) any Claim prior to it having become an Allowed Claim.

1.39    **"Distribution Agent"** means the Reorganized Debtors, or any other Entity selected by the Reorganized Debtors and approved by the Exit Lender, in its sole discretion, to make or facilitate distributions pursuant to the Plan.

1.40    **"Distribution Date"** means the date or dates under the Plan when Cash or Property is required to be distributed to the Holders of Allowed Claims in accordance with the Plan, including the Initial Distribution.

1.41    **"Distribution Record Date"** means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which shall be immediately after entry of the Confirmation Order or (b) such other date as designated by an order of the Bankruptcy Court.

1.42    **"District Court"** means the United States District Court for the District of Colorado.

1.43    **"EB5 Claim"** means a Claim owing by the Debtors to Aspen Club Development Fund, L.P., a Colorado limited partnership.

1.44    **"Effective Date"** means the date on which the Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the effectiveness of this Plan specified in Section 12.2, have been satisfied, or, if capable of being waived in accordance with

the terms herein, waived, which date shall be specified in a notice filed by the Reorganized Debtors with the Bankruptcy Court.

1.45    **"Eligible Holder"** means a Holder of an Allowed Claim who is an Accredited Investor.

1.46    **"Entity"** has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

1.47    **"Equity Security"** has the meaning ascribed to such term in Section 101(16) of the Bankruptcy Code.

1.48    **"ERISA"** means the Employee Retirement Income Security Act of 1974.

1.49    **"Estates"** means the bankruptcy estates of the Debtors created pursuant to Section 541 of the Bankruptcy Code.

1.50    **"Event"** means any event, development, occurrence, circumstance or change.

1.51    **"Exchange Act"** means the Securities Exchange Act of 1934, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

1.52    **"Exculpated Claim"** means any Claim (as defined in Section 101(5) of the Bankruptcy Code) or Legal Proceeding against any Entity arising after the Petition Date and before the Confirmation Date related to any act or omission in connection with, relating to, or arising out of the Debtors' restructuring, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the settlement of Claims or renegotiation of Executory Contracts or Unexpired Leases, the negotiation of the Plan, the DIP Credit Agreement, the Exit Financing, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, including the issuance of Plan securities, the distribution of property under the Plan, or any other transaction contemplated by the Plan or Disclosure Statement, or in furtherance thereof.

1.53    **"Exculpated Parties"** means, collectively, each of the following solely in their respective capacities as such: (a) the Debtors, and each of their successors and assigns, (b) the Reorganized Debtors, (c) the DIP Lender, and (d) with respect to each of the foregoing parties in clauses (a) through (c), such parties' subsidiaries, Affiliates, officers, directors, principals, members, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other representatives and professionals; provided, that, solely with respect to the Debtors' directors and officers, this clause (d) shall apply only to (i) the existing directors (and their counsel) and (ii) the Debtors' officers who continued to serve in such roles as of September 16, 2019 (the initial filing date of the Plan).

1.54 **"Executory Contract"** means any contract to which any Debtor is a party that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

1.55 **"Exhibit"** means an exhibit annexed either to the Plan, contained in the Plan Supplement, or annexed as an appendix to the Disclosure Statement.

1.56 **"Exit Financing"** means the loan to be advanced by the Exit Lender to the Reorganized Debtors upon Confirmation of the Plan, and the proceeds of which loan will allow the Reorganized Debtors to facilitate their business plan and make the payments and distributions to Holders of Claims and Interests described under the Plan.

1.57 **"Exit Lender"** means EFO Financial Group, LLC, a Florida limited liability company, its participants and/or assigns.

1.58 **"Face Amount"** means, (a) when used in reference to a Disputed Claim or Disallowed Claim, the full stated liquidated amount claimed by the Holder of a Claim in any Proof of Claim, or amendment thereof in accordance with applicable law, timely filed with the Bankruptcy Court or otherwise deemed timely filed by any order of the Bankruptcy Court or other applicable bankruptcy law, or the amount estimated for such Claim in an order of the Bankruptcy Court, and (b) when used in reference to an Allowed Claim or Allowed Interest, the Allowed amount of such Claim or Interest. If none of the foregoing applies, the Face Amount of the Claim shall be zero ($0) dollars.

1.59 **"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

1.60 **"Final Order"** means an order or judgment, the operation or effect of which has not been reversed, stayed, vacated, modified, or amended, is in full force and effect, and as to which order or judgment (or any reversal, stay, vacation, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedures, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order or judgement shall not prevent such order or judgement from being a Final Order; provided, further, that the Debtors or Reorganized Debtors, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

1.61 **"Fractional Units"** means the deeded monthly fractional ownership of residential units located within the Project and to be sold by the Reorganized Debtors to fund the payments to be made pursuant to the Plan.

1.62    **"General Unsecured Claim"** means any Claim that is not an Administrative Claim, DIP Facility Claim, Priority Tax Claim, Mechanics Lien Secured Claim, Convenience Claim, Other Secured Claim, Other Priority Claim, or Other Subordinated Claim. Without limiting the foregoing, General Unsecured Claims include all Rejection Damages Claims that are not Allowed Section 503(b)(9) Claims.

1.63    **"Governmental Unit"** means the definition ascribed to such term in Section 101(27) of the Bankruptcy Code.

1.64    **"GPIF"** means GPIF Aspen Club LLC, a Delaware limited liability company.

1.65    **"Holder"** means a holder of a Claim against or Interest in the Debtors.

1.66    **"Impaired"** means impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.67    **"Indemnification Provisions"** means each of the indemnification provisions, agreement or obligations of the Debtors in place as of the Petition Date, whether in the bylaws, certificate of incorporation, articles of organization or other formation documents, board resolutions to employment contracts, in each case for the benefit of the current and former directors, officers, members, employees, attorneys, or other professional and agents of the Debtors.

1.68    **"Initial Distribution"** means as soon as reasonably practical (as determined by the Reorganized Debtors but with the consent of the Exit Lender, in its sole discretion) after the Effective Date and after the initial advance of the Exit Facility.

1.69    **"Insurance Contract"** is defined in Section 8.4 of the Plan.

1.70    **"Insurance Claim"** is defined in Section 8.4 of the Plan.

1.71    **"Interest"** means any "Equity Security" of a Debtor or any "Equity Security holder" as those terms are defined in §§ 101(16) and (17) of the Bankruptcy Code.

1.72    **"Law"** means any law (statutory or common), statute, regulation, rule, code or ordinance enacted, adopted, issued, or promulgated by any Governmental Unit.

1.73    **"Legal Proceeding"** means legal, governmental, administrative, judicial, or regulatory investigations, audits, actions, suits, claims, arbitrations, demands, demand letters, notices of noncompliance or violation, or proceedings.

1.74    **"Letter of Credit Claim"** means a Claim arising pursuant to a certain letter of credit agreement and owing by the Debtors to: (i) Nick Burgin; (ii) Robert McTamaney; (iii) Jeff Citrin; (iv) Robert A. Fox; and (v) Ed McDermott.

1.75    **"Lien"** has the meaning ascribed to such term in Section 101(37) of the Bankruptcy Code.

1.76    **"Lien Deficiency Claim"** means that portion of an Allowed Claim asserted by the Holder of a Secured Claim which is determined to be an unsecured claim within the meaning of Section 506(a)(1) of the Bankruptcy Code.

1.77    **"Local Rules"** means the local rules of the Bankruptcy Court, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases.

1.78    **"Mechanics Lien Secured Claim"** means a Secured Claim which arises under the Colorado Mechanics Lien Statute; C.R.S. § 38-22-101, et. seq.

1.79    **"Mezzanine Debt Claim"** means a Claim owing by the Debtors or either of them to: (i) Robert A. Fox; (ii) David A. and Donna L. Gerson; (iii) Grant Place Fund LLC; (iv) Telesoft Management Cash Balance Plan; (v) Arnold Whitman; (vi) Ken Fox; (vii) Candy Allen; or (viii) Michael Margolis.

1.80    **"Net Cash Flow"** means the Cash (exclusive of and not including Net Sale Proceeds) received by the Reorganized Debtors during each calendar quarter following the Effective Date minus the sum of (a) the Cash paid out by the Reorganized Debtors during the same calendar quarter plus (b) the amount of Cash reserved by the Reorganized Debtors during such calendar quarter to meet future or accruing operating expenses, payroll expenses, compensation expenses, commissions, fees and other accruing expenses and which reserve shall be determined by the Reorganized Debtors in the exercise of their reasonable business judgement.

1.81    **"Net Sale Proceeds"** means the amount of Cash paid to the Reorganized Debtors through the sale of Fractional Units, minus the selling costs associated with the sale of the Fractional Units, including without limitation, real estate commissions, pro-ration of property taxes and utilities, transfer taxes, excise taxes, title fees, escrow fees and closing costs. For the avoidance of doubt, in no event shall the Net Sales Proceeds be less than 90% of the gross amount of Cash paid for the Fractional Units.

1.82    **"New Articles of Organization"** means the articles of organization, certificates of formation, or functional equivalent thereof, as applicable, of each of the Reorganized Debtors, the form of which shall be included in the Plan Supplement, and subject to Section 6.9 hereof.

1.83    **"New Board"** means the initial board of directors or functional equivalent thereof, as applicable, of the Reorganized Debtors as designated pursuant to Section 6.10.

1.84    **"New Bylaws"** means the bylaws, limited liability company agreement, or functional equivalent thereof, as applicable, of the Reorganized Debtors, the provisions of which shall be consistent with the requirements of the Plan, and subject to Section 6.9 hereof.

1.85    **"New Corporate Governance Documents"** means, as applicable, (a) the New Articles of Organization, (b) the New Bylaws, and (c) the New Operating Agreements, in each case the provisions of which shall be consistent with the requirements of the Plan, and subject to Section 6.9 hereof.

1.86    **"New Operating Agreements"** means the Operating Agreements or functional equivalents thereof, as applicable, of each of the Reorganized Debtors, the provisions of which shall be consistent with the requirements of the Plan, and subject to Section 6.9 hereof.

1.87    **"Other Priority Claim"** means any Claim, other than an Administrative Claim or Priority Tax Claim entitled to priority payment as specified in Section 507(a) of the Bankruptcy Code.

1.88    **"Other Secured Claims"** means the Secured Claims asserted by Holders of (i) EB5 Claims; and (ii) Mezzanine Debt Claims.

1.89    **"Periodic Distribution Date"** means, as applicable, (a) the Distribution Date, as to the first distribution made by the Distribution Agent, and (b) thereafter, such Business Days selected by the Reorganized Debtors in their reasonable discretion, which shall be no less frequent than once every three (3) months unless otherwise determined by the board of the Reorganized Debtors.

1.90    **"Person"** has the meaning ascribed to such term in Section 101(41) of the Bankruptcy Code.

1.91    **"Petition Date"** means May 16, 2019 with regard to Spa, and May 17, 2019 with regard to Redevelopment .

1.92    **"Plan"** means this joint second amended and modified plan of reorganization of the Debtors in the Chapter 11 Cases, proposed under chapter 11 of title 11, United States Code dated as of the Effective Date and as may be modified in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms herein, including all Exhibits to the Plan, including, without limitation, those Exhibits that are or will be contained in the Plan Supplement and all Exhibits therein, which Plan (and all such Exhibits thereto) shall be in form and substance acceptable to the Exit Lender, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code with the consent of the Exit Lender.

1.93    **"Plan Supplement"** means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court, which shall be in form and substance acceptable to the Exit Lender.

1.94    **"Plan Supplement Filing Date"** means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least seven days prior to the Voting Deadline or such other date as may be approved by the Bankruptcy Court without further notice.

1.95    **"Plan Transaction Documents"** means all definitive documents and agreements to which the Debtors or Reorganized Debtors will be a party as contemplated by the Plan, including (a) the Plan and any documentation or agreements related thereto, (b) the Confirmation Order and pleadings in support of entry thereof, (c) the Disclosure Statement, the solicitation materials in respect of the Plan, the motion to approve the Disclosure Statement, and the Disclosure Statement Approval Order, and (d) all documents that will comprise the Plan Supplements, including without limitation, the Exit Financing loan documents and all of the Plan Transaction Documents shall be in form and substance acceptable to the Exit Lender.

1.96    **"Prime Rate"** means the per annum rate of interest equal to the "prime rate," as published in the "Money Rates" column of the *Wall Street Journal*, as published on the Effective Date.

1.97    **"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.98    **"Pro Rata"** means, with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes at issue.

1.99    **"Professional"** means any Person (a) retained in the Chapter 11 Cases as authorized by order of the Bankruptcy Court entered pursuant to Sections 327 or 1103 of the Bankruptcy Code or otherwise; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.100    **"Professional Claim"** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Confirmation Date and which Claim remains unpaid as of the Confirmation Date.

1.101    **"Project"** means the real estate development project belonging to the Debtors and titled in the name of Aspen Club Redevelopment Company, LLC, consisting of real property located at 1450 Crystal Lake Avenue, Aspen, Colorado, or sometimes referred to as 1450 Ute Avenue, Aspen, Colorado and comprising a total of approximately five acres which includes (i) six (6) to-be-completed 4-bedroom condominiums with an aggregate of 16,200 square feet of living space (ii) ten (10) to-be-completed 3-bedroom townhomes with an aggregate of 20,350 square feet of living space, (iii) four (4) to-be-completed 4-bedroom townhomes with an aggregate of 10,800 square feet of living space, (iv) twelve (12) to-be-completed workforce housing units with an aggregate of 10,800 square feet of living space, and (v) the to-be-completed club, spa, and amenity package encompassing 60,838 square feet of usable space, as further described in the Disclosure Statement.

1.102 **"Projections"** means the cash flow projections for the Reorganized Debtors which are attached to the Disclosure Statement and which may be modified in the Plan Supplement.

1.103 **"Proof of Claim"** means a proof of claim filed or required to be filed with the Bankruptcy Court with respect to a Claim against one or more of the Debtors and filed pursuant to Bankruptcy Rule 3001, 3002, or 3003.

1.104 **"Redevelopment"** means Aspen Club Redevelopment Company, LLC, a Colorado limited liability company.

1.105 **"Reinstated"** or **"Reinstatement"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Claim Holder so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Claim Holder to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claim Holder for any damages incurred as a result of any reasonable reliance by such Claim Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Claim Holder; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

1.106 **"Rejection Damages Claim"** means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to Section 365 of the Bankruptcy Code or the repudiation of such contract.

1.107 **"Reorganized Debtors"** means the Debtors or any successor thereto, by merger, consolidation, or otherwise, from and after the Effective Date.

1.108 **"Retainage"** means, in regard to a Mechanics Lien Secured Claim, that portion of such Claim that constitutes either (i) the percentage of the agreed upon contract price deliberately withheld by the Debtors from payment to the Holder of a Mechanics Lien Secured Claim until the agreed upon work is complete, or (ii) to the extent a withholding amount has not been contractually agreed upon by the Holder of a Mechanics Lien Secured Claim then an amount equal to 10% of such Mechanics Lien Secured Claim shall be withheld from payment to the Holder of such Claim until the agreed upon work is complete.

1.109 **"Restructuring Transactions"** has the meaning set forth in Article 6.3.

1.110   **"Revere"** means Revere High Yield Fund, L.P., a Delaware limited partnership.

1.111   **"Scheduled**" means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

1.112   **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, which incorporate by reference the global notes and statement of limitations, methodology, and disclaimer regarding the Debtors' schedules and statements, as such schedules or statements have been or may be further modified, amended, or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Final Orders of the Bankruptcy Court.

1.113   **"Section 503(b)(9) Claim"** means any Claim asserted under Section 503(b)(9) of the Bankruptcy Code equal to the value of any goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the Debtors' ordinary course of business.

1.114   **"Secured Claim"** means a Claim (a) secured by a valid and fully enforceable Lien on property of the Estates to the extent of the value of such property, as determined in accordance with Section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to Section 553 of the Bankruptcy Code.

1.115   **"Securities Act"** means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

1.116   **"Security"** has the meaning ascribed to such term in Section 2(a)(1) of the Securities Act.

1.117   **"Spa"** means The Aspen Club & Spa, LLC, a Colorado limited liability company.

1.118   **"Subordinated Claim"** means any Claim against the Debtors that is subject to subordination under Section 510(b) or (c) of the Bankruptcy Code, whether arising from rescission of a purchase or sale of a Security of the Debtors or Affiliates of the Debtors, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such Claim, or otherwise, which Claim shall be subordinated to all Claims or Interests that are senior to or equal to the Claim or Interest represented by such Security.

1.119   **"Unclaimed Distribution"** means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized

Debtors' request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

1.120  **"Unexpired Lease"** means a lease of nonresidential real property to which any Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.121  **"Unimpaired"** means, with respect to a Class of Claims, a Class of Claims that is not Impaired.

1.122  **"United States"** means the United States of America.

1.123  **"United States Trustee"** means the Office of the United States Trustee for the District of Colorado.

1.124  **"Voting Deadline"** means the last day to submit a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Order.

C.   Rules of Interpretation

For purposes of the Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (f) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; (i) to the extent the Disclosure Statement is inconsistent with the terms of this Plan, this Plan shall control; (j) to the extent the Plan is inconsistent with the Confirmation Order, the Confirmation Order shall control; (k) any immaterial effectuating provision may be interpreted by the Reorganized Debtors in a manner that is consistent with the overall purpose and intent of the Plan without further Final Order of the Bankruptcy Court; and (l) to the extent that any right of any Entity (other than the Debtors or Reorganized Debtors) to consent to a matter, action or otherwise is unqualified, it shall be implied that such consent right may not be unreasonably withheld.

D.   Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

E.     <u>References to Monetary Figures</u>

All references in the Plan to monetary figures and dollar amounts shall refer to Cash, unless otherwise expressly provided for in the Plan.

F.     <u>Exhibits</u>

All Exhibits are incorporated in their entirety into, and are a part of, the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the Plan Supplement Filing Date, copies of Exhibits may be obtained upon written request to William Cross c/o Markus Williams Young & Hunsicker LLC, 1700 Lincoln Street, Suite 4550, Denver, Colorado 80203; 303-830-0800; WCross@MarkusWilliams.com. To the extent any Exhibit is inconsistent with the terms of the Plan and unless otherwise provided for in the Confirmation Order, the terms of the Exhibit shall control as to the transactions contemplated thereby and the terms of the Plan shall control as to any Plan provision that may be required under the Exhibit.

**ARTICLE II**
**<u>TREATMENT OF ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIM,</u>**
**<u>PROFESSIONAL CLAIMS, AND PRIORITY TAX CLAIMS</u>**

**2.1     Administrative Claims.**   Except to the extent that the Debtors (or the Reorganized Debtors) and a Holder of an Allowed Administrative Claim agree to less favorable treatment, a Holder of an Allowed Administrative Claim (other than a Professional Claim, which shall be subject to Section 2.3 of the Plan) shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim either (a) on the Distribution Date; (b) on the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when an Administrative Claim becomes an Allowed Administrative Claim or (ii) 30 days after the date when an Administrative Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Administrative Claim, or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims; provided, however, that other than Holders of (i) DIP Facility Claims, (ii) Professional Claims, (iii) Administrative Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (iv) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, the Holder of any Administrative Claim shall have filed a request for payment of an Administrative Claim form no later than the Administrative Claims Bar Date and such Claim shall have become an Allowed Administrative Claim. All requests for payment of an Administrative Claim must be filed with the Bankruptcy Court and served on counsel for the Debtors or the Reorganized Debtors by no later than the Administrative Claims Bar Date. Any request for payment of an Administrative Claim pursuant to this Section 2.1 that is not timely filed and served shall be Disallowed

automatically without the need for any objection from the Reorganized Debtors. The Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval. In the event that the Reorganized Debtors object to an Administrative Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

### 2.2    DIP Facility Allowed Claim.

(a)    **DIP Facility Claim.** Pursuant to the DIP Facility Order, the Bankruptcy Court has approved interim advances from the DIP Lender to the Debtors, which DIP Facility is secured, except as set forth in the DIP Facility Order, by a first priority, priming Lien in favor of the DIP Lender on substantially all of the Property of the Debtors. The full amount of the DIP Facility Claim shall at all times be deemed an Allowed Claim in full.

(b)    **Payment of DIP Facility Claim.** Pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code, the DIP Lender is entitled to receive on the Effective Date, in full and final satisfaction, settlement, release, extinguishment, and discharge of the DIP Facility Claim, Cash equal to the full amount of the DIP Facility Claim. Notwithstanding, the Reorganized Debtors propose that the treatment afforded to the DIP Facility Claim in the Plan results in the DIP Facility Claim being deemed satisfied, discharged, cancelled, and released and shall be of no further force and effect upon the payment in full of the DIP Facility Claim on the Effective Date in accordance with and pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code. To the extent that the DIP Lender or agent acting on its behalf has filed or recorded publicly any Liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lender and/or agent of the DIP Lender, shall take any commercially reasonable steps requested by the Reorganized Debtors that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests, but in all events subject to the treatment of such Liens as provided for herein.

### 2.3    Professional Claims.

(a)    **Final Fee Applications.** All final requests for payment of Professional Claims must be filed no later than sixty (60) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior orders of the Bankruptcy Court, and after such sixty (60) day period has passed, the Allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court.

(b)    **Payment of Allowed Professional Claims.**   Except to the extent that the Debtors (or the Reorganized Debtors) and a Holder of an Allowed Professional Claim agree to less favorable treatment, a Holder of an Allowed Professional Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Professional Claim, Cash equal to the unpaid portion of such Allowed Professional Claim either (a) on the Distribution Date; (b) on the first Periodic Distribution Date occurring after the later of (i) 30 days after the date when an Professional Claim becomes an Allowed Professional Claim or (ii)

30 days after the date when a Professional Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the Holder of such Professional Claim.

(c)     **Post-Confirmation Date Retention.** Upon the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall employ and pay Professionals in the ordinary course of business (including the reasonable fees and expenses incurred by Professionals in preparing, reviewing and prosecuting or addressing any issues with respect to final fee applications).

2.4     **Priority Tax Claims.** On the Distribution Date, except to the extent that the Debtors (or Reorganized Debtors) and a Holder of an Allowed Priority Tax Claim agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments on account of such Claim: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) Cash in an amount agreed to by the Debtors (or the Reorganized Debtors) and such Holder, provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date, or (c) at the sole option of the Debtors, Cash in the aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five (5) years after the Petition Date pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## ARTICLE III
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

3.1     **Classification of Claims and Interests.**

(a)     Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and, to the extent applicable, receiving distributions and payments pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in Article II above.

(b)     The Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases and  constitutes a substantive consolidation of the Debtors' Estates for voting purposes. The Plan is proposed jointly and constitutes a single plan for  the Debtors for voting purposes. Therefore, all Claims against and Interest in a particular Debtor are placed in the Classes set forth below with respect to both Debtors.

The classification of Claims and Interests (as applicable) under the Plan is as set forth below.

| Classification | Description |
|---|---|
| Classes 1 A thru 1TT | Allowed Mechanics Lien Secured Claims |
| Class 2 | Allowed Claim of GPIF |
| Class 3 | Allowed Claim of Revere |
| Class 4 | Allowed EB5 Claims |
| Class 5 | Allowed Letter of Credit Claims |
| Class 6 | Allowed Mezzanine Debt Claims |
| Class 7 | Allowed Other Priority Claims |
| Class 8 | Allowed General Unsecured Claims |
| Class 9 | Subordinated Claims |
| Class 10 | Interests |

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

### 4.1   Allowed Mechanics Lien Secured Claims (Classes 1A through 1TT)

(a)     Classification: Classes 1A through 1TT consist of all Allowed Mechanics Lien Secured Claims. The Holder of each Allowed Mechanics Lien Secured Claim and the Class in which each Allowed Mechanics Lien Secured Claim is placed are as follows:

| Class | Name of Holder | Allowed Claim Amount[1] |
|---|---|---|
| 1A | AIA Industries, Inc. | $57,377.77 |
| 1B | Allman Drywall, Inc. | $681,830.90 |
| 1C | Ashley Concrete Structures, LLC | $1,296,686.32 |
| 1D | Balentine Collection International – RETN | $17,599.44 |
| 1E | Brekhus Tile & Stone, Inc. | $443,423.35 |
| 1F | Can-America Drilling, Inc. | $146,340.20 |
| 1G | City of Aspen Water Department | $34,608.33 |
| 1H | ColoradoCrete, Inc. | $157,668.23 |
| 1I | Colorado Doorways | $29,383.44 |
| 1J | Colorado Poolscapes | $44,056.71 |
| 1K | CTL Thompson Inc. | $59,229.96 |

---

[1] This column represents the Allowed Amount of each Mechanics Lien Secured Claim as of February 1, 2020 and to which amount there shall be added interest at the statutory rate of 12% per annum from February 1, 2020 through the date upon which such Allowed Mechanics Lien Secured Claim is paid in full; provided however, the Debtors reserve the right to modify or amend the Allowed Amounts at any time prior to the Confirmation Date based on agreements or stipulations reached with the Holders of Mechanics Lien Secured Claims.  The Allowed Amount for PCL Construction Services is likely subject to further revisions and negotiations with PCL and certain other Claim Amounts set forth herein may already be included in another Mechanics Lien Secured Claim and will need to removed and disallowed as double counted.

| 1L | Eagle Glass and Mirror Inc. | $96,127.05 |
| 1M | Edge Construction Specialties, Inc. | $713,330.21 |
| 1N | Four Seasons | $95,588.23 |
| 1O | Forte International LLC | $118,544.50 |
| 1P | Gateway Real Estate Investments LLC | $541,313.77 |
| 1Q | Gould Construction, Inc. | $2,180,761.66 |
| 1R | Grand County Roofing & Sheet Metal, Inc. | $514,494.21 |
| 1S | United Subcontractors, Inc. d/b/a Herblan Fireproofing n/k/a Builder Services Group, Inc. | $74,280.74 |
| 1T | HTM Construction | $84,046.90 |
| 1U | IMI, Inc. | $216,051.18 |
| 1V | Imprint Hospitality, LLC | $44,663.40 |
| 1W | InsulVail, LLC | $121,086.96 |
| 1X | Interface Communications Company | $110,531.38 |
| 1Y | Ludvik Electric Co. | $2,791,281.35 |
| 1Z | Martin-Ray Laundry Systems | $36,875.86 |
| 1AA | Mountain Man Masonry, LLC | $199,358.09 |
| 1BB | Myers & Co., Architectural Metals | $2,206,434.11 |
| 1CC | Orion Environmental, Inc. | $274,567.05 |
| 1DD | Otis Elevator Company | $52,081.12 |
| 1EE | OZ Architecture, Inc. | $717,747.84 |
| 1FF | PCL Construction Services, Inc. | $6,823,434.92 |
| 1GG | Precision Construction West, Inc. | $116,254.44 |
| 1HH | PSI Crane & Rigging, Inc. | $386,869.35 |
| 1II | RK Mechanical, Inc. | $3,780,342.51 |
| 1JJ | Roberts and Com Inc. (Aspen Insulation) | $48,976.91 |
| 1KK | S2M Construction Co., Inc. | $86,383.53 |
| 1LL | Safeway Services, LLC | $8,438.09 |
| 1MM | Smuggler Finishes, Inc. | $60,142.84 |
| 1NN | Sopris Engineering LLC | $145,950.79 |
| 1OO | Stanton Engineering Solutions, Inc. | $36,024.38 |
| 1PP | Summit Sealants, Inc. | $231,893.52 |
| 1QQ | True North Hearth and Home, Inc. | $143,161.11 |
| 1RR | TWC, LLC | $634,468.84 |
| 1TT | Western States Fire Protection Company | $224,736.07 |

(b)     Treatment: Except to the extent that a Holder of an Allowed Mechanics Lien Secured Claim agrees to a less favorable treatment and subject to Section 6.1, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Mechanics Lien Secured Claim, each Holder of an Allowed Mechanics Lien Secured Claim shall be paid as follows:

(i)     On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed Mechanic Lien Secured Claim shall receive a Cash payment equal to 100% of their Allowed Claim Amount set forth in Section 4.1(a) plus any accrued interest owing as of the Effective Date;

(ii)    Contemporaneously with payment made pursuant to Section 4.1(b)(i) above, each Holder of an Allowed Mechanic Lien Secured Claim shall furnish properly executed and notarized lien waivers in form reasonably requested by Exit Lender and in a manner consistent with applicable non-bankruptcy law;

(iii)   No Allowed Mechanic Lien Secured Claim Holder's contract or subcontract shall be assumed under the Plan, without the express written consent of the Holder, the Debtor and the Exit Lender and all contracts not assumed will be deemed rejected;

(iv)    This Plan hereby provides and the Exit Financing and any documents and orders relating to them shall also expressly provide that the Liens, Claims and security interests granted to the Exit Lender (and the rights of Holders of Allowed Class 2, 3, 4 and 5 Claims) shall be subordinate to: (a) all Allowed Mechanic Lien Secured Claims; and (b) all Claims of contractors, subcontractors, mechanic, materialman and other persons or entities performing work on the Project after the Petition Date consistent with applicable non-bankruptcy law; and

(v)     This Plan hereby provides and the Exit Financing and any documents and orders relating to them shall further provide that Exit Lender shall fund the Reorganized Debtors in amounts sufficient to pay Post-Effective Date Mechanics Lien Claims in accord with applicable non-bankruptcy law. Specifically, Holders of Allowed Mechanics Lien Secured Claims providing goods, labor and related construction services to the Project following the Petition Date shall be paid in accordance with and pursuant to their contracts with the Debtors (or the general contractor with respect to the Project) for those goods, labor and services provided after the Petition Date and such Claims shall be senior to any Claim owing to the Exit Lender.

(c)     Voting: Classes 1A through 1TT are Unimpaired and Holders of Allowed Mechanics Lien Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Allowed Mechanics Lien Claims are not entitled to vote to accept or reject the Plan.

**4.2     Allowed Claim of GPIF (Class 2)**

(a)     Classification: Class 2 consists of the Allowed Claim of GPIF

(b)     Treatment:

(i)     The Allowed Claim of GPIF constitutes an Allowed Secured Claim, and subject to Section 10.6 of the Plan GPIF shall receive a promissory note executed by

the Reorganized Debtors in a principal amount equal to the Allowed Secured Claim Amount owing to GPIF and which promissory note shall accrue interest on the principal amounts outstanding under the promissory note at a per annum rate equal to the Prime Rate plus an additional 1% and which promissory note shall be secured by the Lien currently securing the Allowed Secured Claim belonging to GPIF (subject to any Liens having a priority senior to GPIF's Lien, including, without limitation, the Exit Financing, and subject to § 6.3 of the Plan).

      (ii)        The promissory note described above shall be repaid as follows:

      a.        At the end of each calendar quarter following the Effective Date, GPIF shall receive a Cash payment equal to 25% of the Net Cash Flow generated by the Reorganized Debtors during the immediately preceding calendar quarter;

      b.        Beginning with the month after the Exit Lender has received Cash payments from Net Sales Proceeds which reduce the Reorganized Debtors outstanding principal balance owed to the Exit Lender by $50 million together with interest not otherwise paid through the interest reserve established under the Exit Financing, GPIF shall receive the next $10 million of Cash payments from Net Sale Proceeds paid by the Reorganized Debtors[2];

      c.        Beginning with the month after the Exit Lender has received Cash payments from Net Sales Proceeds which reduce the Reorganized Debtors outstanding principal balance owed to the Exit Lender by $100 million together with interest not otherwise paid through the interest reserve established under the Exit Financing, GPIF shall receive the next $10 million of Net Sale Proceeds paid by the Reorganized Debtors[3];

      d.        Upon payment in full of all amounts owing to the Exit Lender and the Holders of Allowed Mechanics Lien Secured Claims, GPIF shall receive on a quarterly basis 100% of all Net Sale Proceeds collected by the Reorganized Debtors, along with quarterly Cash payments equal to 100% of the Net Cash Flow generated by the Reorganized Debtors in the calendar quarters following the satisfaction in full of the Exit Facility and all Allowed Mechanic Lien Secured Claims and GPIF shall receive such 100% of Net Sales Proceeds and 100% of Net Cash Flow only until the Allowed Secured Claim of GPIF is paid in full; and

      e.        Notwithstanding anything contained in this subparagraph e and the immediately preceding subparagraphs b, c and d, the Reorganized Debtors shall retain the right (in the exercise of their reasonable business judgment and without further order of the Bankruptcy Court) at all times to refinance and pay off the Exit Financing owing to the Exit Lender (in whole or in part) and after payment in whole or in part from such a refinancing of the amounts owing to the Exit Lender, the Debtors and Reorganized

---

[2] For purposes of clarity, once GPIF has received the $10 million described in § 4.2(b)(ii)(b) the next Net Sale Proceeds generated by the Reorganized Debtors shall be paid to the Exit Lender in accordance with §4.2(b)(ii)(c).

[3] For purposes of clarity, once GPIF has received the $10 million described in § 4.2(b)(ii)(c) the next Net Sale Proceeds generated by the Reorganized Debtors shall be paid to the Exit Lender until the indebtedness owing pursuant to the Exit Financing has been paid and satisfied in full.

Debtors hereby reserve the right to pay, in part or in whole, the amount owing on account of the Allowed Secured Claim of GPIF at any time and in the manner (which may be different than  the allocations set forth in the immediately preceding subparagraphs b, c and d) the Debtors or Reorganized Debtors believe is appropriate, in their sole and absolute discretion.

(c)    Voting: The Holder of the Class 2 Claim is Impaired and the Holder of the Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

### 4.3    Allowed Claim of Revere (Class 3)

(a)  Classification: Class 3 consists of the Allowed Claim of Revere

(b)    Treatment:

(i)    The Allowed Claim of Revere constitutes an Allowed Secured Claim and subject to Section 10.6 of the Plan Revere shall receive a promissory note executed by the Reorganized Debtors in a principal amount equal to the Allowed Secured Claim Amount owing to Revere on its Allowed Secured Claim and which promissory note shall accrue interest at the per annum rate equal to the Prime Rate plus an additional 1.5% and which promissory note shall be secured by the Lien currently securing the Allowed Secured Claim belonging to Revere (subject to any Liens having a priority senior to Revere's Lien, including, without limitation, the Exit Financing, and subject to § 6.3 of the Plan).

(ii)    The promissory note described above shall be paid in full from Net Cash Flow and Net Sale Proceeds or other monies loaned to, collected by or provided to the Reorganized Debtors and shall be paid after the date the Exit Financing and the Allowed Secured Claims falling within Class 1 and Class 2 have been paid in full.

(c)    Voting: The Holder of the Class 3 Claim is Impaired and the Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

### 4.4    EB5 Claim (Class 4)

(a)    Classification: Class 4 consists of Allowed EB5 Claim

(b)    Treatment: Except as otherwise provided in and subject to Section 10.6 of the Plan, and except to the extent the Holder of the Allowed EB5 Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for the Allowed EB5 Claim, the Holder of an Allowed EB5 Claim shall be paid as follows:

(i)    The Allowed Claim of the Holder of the EB5 Claim constitutes an Allowed Secured Claim and the Holder of the Allowed Secured EB5 Claim shall receive a promissory note executed by the Reorganized Debtors in a principal amount equal to the Allowed Secured Claim Amount assigned to such EB5 Allowed Secured Claim and which promissory note shall accrue interest at the Prime Rate plus an additional 2% and which

promissory note shall be secured by the Lien currently securing the Allowed Secured Claim belonging to the Holder of such EB5 Claim (subject to any Liens having a priority senior to such EB5 Claims' Lien, including, without limitation, the Exit Financing, and subject to § 6.3 of the Plan).

(ii)    The promissory note described above shall be paid in full from Net Cash Flow and Net Sale Proceeds or other monies loaned to, collected by or provided to the Reorganized Debtors and shall be paid after the date the Exit Financing and the Allowed Secured Claims falling within Class 1, Class 2 and Class 3 have been paid in full.

(c)    Voting: The Holders of the Class 4 Claims are Impaired and the Holders of the Class 4 Claims are entitled to vote to accept or reject the Plan.

### 4.5    Letter of Credit Claims (Class 5)

(a)    Classification: Class 5 consists of all Allowed Letter of Credit Claims.

(b)    Treatment: Except as otherwise provided in and subject to Section 10.6 of the Plan, and except to the extent that a Holder of an Allowed Letter of Credit Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in exchange for each and every Allowed Letter of Credit Claim, each such Holder of an Allowed Letter of Credit Claim shall receive:

(i)    A promissory note executed by the Reorganized Debtors in a principal amount equal to the Allowed Secured Claim amount owing to such Holder of an Allowed Letter of Credit Claim and which promissory note shall accrue interest at the rate of six percent (6%) per annum.  On the date that the Allowed Claims in Classes 1A-1TT, Class 2, Class 3 and Class 4 have been paid in full, the promissory note(s) executed in favor of each Holder of a Class 5 Claim shall accrue interest at ten percent (10%) per annum each year thereafter until such promissory note(s) are paid in full.

(ii)    The promissory note described above shall be paid in full from Net Cash Flow and Net Sale Proceeds or other monies loaned to, collected by or proved to the Reorganized Debtors and shall be paid after the Exit Financing and the Allowed Secured Claims owing within Class 1, Class 2, Class 3 and Class 4 have been paid in full.

(c)    Voting: Class 5 is Impaired, and Holders of Allowed Letter of Credit Claims are entitled to vote to accept or reject the Plan.

### 4.6    Mezzanine Debt Claims (Class 6)

(a)  Classification: Class 6 consists of all Allowed Mezzanine Debt Claims.

(b)    Treatment: Except as otherwise provided in and subject to Section 10.6 of the Plan, and except to the extent that a Holder of an Allowed Mezzanine Debt Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge of and in

exchange for each and every Allowed Mezzanine Debt Claim, each such Holder of an Allowed Mezzanine Debt Claim shall receive certain equity interests in the Reorganized Debtors as described and set forth in Section 6.8(c) of the Plan, regardless of which Debtor is liable or obligated on the Allowed Mezzanine Debt Claims.

(c)     Voting: Class 6 is Impaired, and Holders of Allowed Mezzanine Debt Claims are entitled to vote to accept or reject the Plan.

### 4.7     Other Priority Claims (Class 7)

(a)     Classification: Class 7 consists of all Allowed Other Priority Claims.

(b)     Treatment: Except as otherwise provided in and subject to Section 10.6 of the Plan, and except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Other Priority Claim, each such Holder of an Allowed Other Priority Claim shall, at the option of the Debtors; (x) be paid in full in Cash on the first Periodic Distribution Date occurring after the later of (i) the Effective Date and (ii) the date such Other Priority Claim becomes an Allowed Claim or (y) otherwise be left Unimpaired; provided, however, that Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(c)     Voting: Class 7 Claims are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

### 4.8     General Unsecured Claims (Class 8)

(a)     Classification: Class 8 consists of all Allowed General Unsecured Claims.

(b)     Treatment: Subject to Section 10.6 of the Plan and except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Debtor-Adjusted Pro Rata portion of the Net Cash Flow generated by the Reorganized Debtors in the six (6) months following the date upon which the Exit Financing and Allowed Claims in Classes 1, 2, 3 and 4 are paid in full and such Net Cash Flow shall be paid to Holders of Allowed General Unsecured Claims before any Cash payments or distributions can be made upon equity interests in the Reorganized Debtors, including without limitation the equity interests authorized to be issued pursuant to Section 6.8(c) of the Plan.

(c)     Voting: Class 8 Claims are Impaired and Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.9 Subordinated Claims (Class 9)

(a) Classification: Class 9 consists of all Bankruptcy Code Section 510(b) and (c) Claims.

(b) Treatment: Holders of Allowed Subordinated Claims shall not receive any distributions on account of such Allowed Subordinated Claims.

(c) Voting: Class 9 Claims are Impaired, and Holders of Allowed Subordinated Claims are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Subordinated Claims are not entitled to vote to accept or reject the Plan.

### 4.10 Interests (Class 10)

(a) Classification:   Class 10 consists of all Interests.

(b) Treatment: On the Effective Date, all Interests in the Debtors shall be cancelled without further action by the Debtors or Reorganized Debtors and the obligations of the Debtors and Reorganized Debtors thereunder shall be discharged. Holders of Interests shall receive no property under the Plan on account of such Interests.

(c) Voting: Class 10 Interests are Impaired, and Holders of Allowed Class 10 Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Class 10 Interests are not entitled to vote to accept or reject the Plan.

### ARTICLE V
### ACCEPTANCE

5.1 **Classes Entitled to Vote.** Class 2, Class 3, Class 4, Class 5, Class 6 and Class 8 are entitled to vote to accept or reject the Plan. By operation of law, Classes 1A thru 1TT, Class 7, Class 9 and Class 10 are either deemed to have accepted the Plan or to have rejected the Plan and are not entitled to vote.

5.2 **Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any Holder designated under Section 1126(e) of the Bankruptcy Code, (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept the Plan.

5.3 **Elimination of Classes.** To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b)

determining whether it has accepted or rejected the Plan under Section 1129(a)(8) of the Bankruptcy Code.

**5.4**    **Deemed Acceptance if No Votes Cast.** If any Holders of Claims eligible to vote in a particular Class fail to vote to accept or reject the Plan, then the Holder of such Claim shall be deemed to have accepted the Plan.

**5.5**    **Cramdown.** To the extent necessary, the Debtors shall request confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1**    **General Settlement of Claims and Interests.**  Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute good-faith compromise and settlement of all Claims and Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.

**6.2**    **No Substantive Consolidation Except for Voting.** The Plan is being proposed as a joint plan of reorganization or liquidation of the Debtors for administrative purposes and constitutes a single Chapter 11 plan for both Debtors. The Plan is not premised upon the substantive consolidation of the Debtors, except for voting purposes as further described in Section 3.1(b) of this Plan.

**6.3**    **Exit Financing, Restructuring Transactions and Sales of Property Free and Clear.**

(a)    Prior to the hearing on Confirmation of the Plan, the Debtors shall seek Bankruptcy Court approval of the Exit Financing, and which approval among other things shall approve a credit facility to be advanced to the Reorganized Debtors and which Exit Financing and the indebtedness incurred and owing thereunder shall at all times constitute a debt: (i) with priority over any or all Administrative Claims; (ii) secured by a Lien on all property of the Estates which is senior and prior to any and all Liens asserted against any property of the Estates; provided however and notwithstanding anything to the contrary herein or otherwise, the Liens granted to the Exit Lender and securing the Exit Financing shall be junior in priority to all Allowed Mechanics Lien Secured Claims (as defined in the Plan) as set out as Classes 1A – 1TT in the Plan and (iii) secured by Lien on all property of the Estates that is not otherwise subject to a Lien.

(b)    Confirmation shall be deemed to immediately authorize the Reorganized Debtors to borrow monies from the Exit Lender available pursuant to the Exit Financing

(including the transactions contemplated thereby) and shall be deemed to authorize all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the loan agreements, deeds of trust, credit agreements, instruments, notes and such other documents as the Exit Lender providing the Exit Financing may reasonably require to effectuate the treatment afforded to such Exit Lender pursuant to the Exit Financing.  The agreements, notes, deeds of trust, instruments and documents to be executed by the Reorganized Debtors and evidencing the terms of the Exit Financing shall be filed in the Chapter 11 Cases as part of the Plan Supplement.  The Debtors currently anticipate that the Exit Financing will be funded in the maximum principal amount of $140,000,000.  At all times following Confirmation of the Plan, the Reorganized Debtors shall retain the right (without penalty, without further order of the Bankruptcy Court and without the consent of any Class) to repay the Exit Financing in full through any mechanism the Reorganized Debtors determine is necessary and appropriate, including without limitation refinancing such indebtedness on more favorable and less costly terms. In the event that the Exit Financing is repaid in whole or in part through a refinancing and loan proceeds provided by a subsequent lender, then any such subsequent lender shall be subrogated to the rights, Liens and security interests granted to the Exit Lender to secure the Exit Financing in the same order and priority position that such rights, Liens and security interests enjoyed and which  existed on the date immediately preceding such refinancing(s).

(c)     On or after the Confirmation Date, the Debtors shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate restructuring of their businesses, to otherwise simplify the overall corporate structure of the Debtors, or to organize certain of the Debtors under the laws of jurisdictions other than the laws of which such Debtors currently are organized, which restructuring may include one or more mergers, consolidations, dispositions, liquidations, or dissolutions as may be determined by the Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of certain of the Debtors vesting in one or more surviving, resulting, or acquiring Entities (collectively, the "Restructuring Transactions"). In each case in which the surviving, resulting, or acquiring Entity in any such transaction is a successor to a Debtor, such surviving, resulting, or acquiring Entity shall perform the obligations of such Debtor pursuant to the Plan to satisfy the Allowed Claims against, or Allowed Interests in, such Debtor, except as provided in any contract, instrument, or other agreement or document effecting a disposition to such surviving, resulting, or acquiring Entity, which may provide that another Debtor shall perform such obligations.

(d)     In effecting the Exit Financing and Restructuring Transactions, the Debtors shall be permitted to (i) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable entities may agree; (ii) execute and deliver appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (iii) file appropriate certificates or articles of merger, consolidation, or dissolution pursuant to applicable state law; and (iv) take all other actions that the applicable Entities determine to be necessary or appropriate, including making

filings or recordings that may be required by applicable state law in connection with such transactions.

(e)     All sales, assignments and transfers of real estate, fractional ownership interests and other property belonging to the Debtors, their Estates or the Reorganized Debtors shall be deemed sold, assigned and transferred to the purchaser, assignee and transferee of such property free and clear of all Claims, Liens, charges, encumbrances, rights and interests other than the liens in favor of the Exit Lender, without the need for any Entity to take any further action or obtain any approval from the Bankruptcy Court. All claims, Liens, charges, encumbrances, rights and interests other than the liens in favor of the Exit Lender in the property sold, assigned or transferred free and clear shall attach to the Net Sales Proceeds generated from the sale, assignment and transfer of such property in the same order and priority as existed at the time immediately preceding the sale of such property.

**6.4     Sources of Cash for Plan Distributions.** All Cash required for payments to be made under the Plan on and after the Effective Date shall be obtained from (i) Cash on hand; (ii) proceeds of the Exit Financing; (iii) Net Sale Proceeds collected by the Reorganized Debtors from the sale of property belonging to the Debtors and Reorganized Debtors; (iv) Net Cash Flow; and (v) future financing(s) and/or refinancing(s) of the Project.

**6.5     Exemptions from Securities Act Registration Requirements.** Except as otherwise set forth in the Plan, the offering, issuance, and distribution of any Securities pursuant to the Plan and any and all settlement agreements incorporated therein will be exempt from the registration requirements of Section 5 of the Securities Act pursuant to Section 1145 of the Bankruptcy Code, Section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable. Section 4(a)(2) of the Securities Act exempts transactions not involving a public offering, and Section 506 of Regulation D of the Securities Act provides a safe harbor under Section 4(a)(2) for transactions that meet certain requirements. In addition, under Section 1145 of the Bankruptcy Code, if applicable, any Securities issued pursuant to the Plan and any and all settlement agreements incorporated therein will be freely transferable under the Securities Act by the recipients thereof, subject to (1) the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, (2) the restrictions, if any, on the transferability of such Securities and instruments, including restrictions contained in the Trust Agreement (if applicable), and (3) any other applicable regulatory approval. Except as otherwise set forth in the Plan, in reliance upon these exemptions, the offer, issuance, and distribution of Securities will not be registered under the Securities Act or any applicable state Blue Sky Laws, and may not be transferred, encumbered or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder. Accordingly, the Securities may be subject to restrictions on transfer as set forth in the governing documents to such Securities.

**6.6     Cancellation of Securities, Instruments, Certificates and Agreements.** On the Effective Date, except as otherwise specifically provided for herein, (a) all agreements (other

than assumed contracts), credit agreements, prepetition loan documents and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors shall be cancelled and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Debtors Securities and any other note, bond, indenture, Certificate, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged and cancelled.

**6.7    Issuance and Distribution of New Securities; Execution of Plan Documents.** Except as otherwise provided in the Plan, on or as soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall issue and/or deliver all Securities, notes, instruments, Certificates, and other documents required to be issued pursuant to the Plan.

**6.8    Continued Company Existence and Equity Interests in Reorganized Debtors.**

(a)    Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as separate entities, the Reorganized Debtors, with all the powers of a company under applicable law in the jurisdiction in which each respective Debtor is organized and pursuant to its respective articles of organization and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organization documents are amended and restated by the Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings required under applicable state, provincial, or federal law).

(b)    Except as otherwise provided in the Plan, the continued existence, operation, and ownership of Affiliates is a material component of the business of the Debtors and the Reorganized Debtors, as applicable, and, as set forth in Section 11.1 of the Plan, all of the Debtors' equity interests and other property interests in such Affiliates shall vest in the Reorganized Debtors or their successors on the Effective Date.

(c)    Upon the earlier to occur of (a) the payment of Class 8 Allowed Claims in full or (b) the acceptance of the Plan by the Holders of Class 8 Claims, the New Board and the Reorganized Debtors shall be deemed authorized to issue equity interests, membership interests or similar ownership interests in the Reorganized Debtors as follows: (i) the equity interests shall be split into Tier 1 equity holders (comprised of  Allowed Mezzanine Debt Claims, regardless of which Debtor is liable or obligated on the Allowed Mezzanine Debt Claims, and Preferred 2 equity holders) and Tier 2 equity holders ( any other Lienholders, Preferred 1 equity holders and Common equity holders); (ii) following payment of all Allowed Claims in accordance with the terms of the Plan all Net Cash Flow generated by the Reorganized Debtors following the issuance of the above described equity interests shall initially be split 75% to Tier 1 equity holders and 25% to Tier 2 equity holders, on a pro rata basis of the principal amount invested with the Debtors by each investor within each of Tier 1 and Tier 2; (iii) once Tier 1 equity

holders have received an amount equal to 100% of their original investment in the Debtors, the split between Tier 1 and Tier 2 shall be reversed and 75% of the above described Net Cash Flow will go to Tier 2 investors and 25% of such Net Cash Flow will go to Tier 1 investors, until Tier 2 investors have received an amount equal to 100% of their investment in back; and (iv) thereafter, all the above described Net Cash Flow generated by the Reorganized Debtors shall be split on a 35%/65% basis respectively between Tier 1 and Tier 2 equity investors.  The above described equity interests, membership interests or similar ownership interests shall be subject to dilution in accordance with the incentive equity compensation payable to the management team for the Reorganized Debtors as further described in the Disclosure Statement.

**6.9    Articles of Organization and Bylaws.** The articles of organization and bylaws (or other formation documents relating to limited liability companies, limited partnership, or other forms of Entity) of the Debtors shall be amended in a form as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective certificates of incorporation, articles of organization and bylaws (or other formation documents relating to limited liability companies, limited partnership, or other forms of Entity) as permitted by the Plan, applicable state corporation law, limited liabilities act and their respective charters and bylaws or other organizational documents.

**6.10    Directors and Officers of Reorganized Debtors.** Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed member of Reorganized Debtors' initial board of directors and each of the initial officers of the Reorganized Debtors (and, to the extent such Person is an insider, the nature of any compensation for such Person) shall be disclosed in the Disclosure Statement, Plan Supplement or as announced on the record at the Confirmation Hearing. The number of members of the New Boards and the identities thereof, and any senior officers of the Reorganized Debtors not presently serving in such capacity, shall be determined by a Supplement to be filed on or before the date of the Disclosure Statement Order.

**6.11    Corporate Action.** Each of the matters provided for under the Plan involving the corporate structure of the Debtors or the Reorganized Debtors or corporate action to be taken by or required of the Debtors or the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors or the Reorganized Debtors.

**6.12    Effectuating Documents; Further Transactions.** On and after the Effective Date, the Reorganized Debtors, and the officers thereof and members of the New Boards, shall be authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**6.13     Employment, Retirement, Indemnification and Other Agreements and Employee Compensation Programs.**

(a)     **Employment Agreements**. To the extent that the Debtors intend for any employment, retirement, indemnification or other agreement with its respective directors, officers, managing members and employees to remain in place after the Effective Date, the Debtors, will list such agreement on the list of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1 of the Plan, and such agreement will be assumed as of the Effective Date. If the Debtors do not list such agreement on the list of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1, such agreement shall be deemed rejected. The Reorganized Debtors may also enter into new employment arrangements and/or change in control agreements with individuals who will serve as officers of the Reorganized Debtors after the Effective Date. On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall adopt, approve, and authorize any new employment arrangements with respect to such officers of the Reorganized Debtors without further action, order, or approval of the New Boards.

(b)     **Other Incentive Plans and Employee Benefits.** Unless otherwise specified in the Plan, and except in connection and not inconsistent with Section 6.19(a), on and after the Effective Date, the Reorganized Debtors shall have the discretion, to (a) amend, adopt, assume, and/or honor, in the ordinary course of business or as otherwise provided herein, any contracts, agreements, policies, programs, and plans for, among other things, compensation, pursuant to the terms thereof or hereof, including the Employee Compensation Plans, any incentive plan, 401(k) plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation benefits, life insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of the Debtors who served in such capacity from and after the Petition Date, and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date.

**6.14     Preservation of Causes of Action.** In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may (but are not required to) enforce all rights to commence and pursue any and all Causes of Action that are not, and such Causes of Action shall vest in the Reorganized Debtors as of the Effective Date. The Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Causes of Action (or decline to do any of the foregoing), and shall not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successor holding such rights of action. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or Final Order of the Bankruptcy Court,

the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), waiver or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan.

**6.15    Reservation of Rights.** With respect to Avoidance Actions, the Debtors and the Reorganized Debtors, as applicable, reserve all rights, including the right under Section 502(d) of the Bankruptcy Code to use defensively the Avoidance Actions as a basis to object to all or any part of a claim against any of the Estates asserted by a creditor which remains in possession of, or otherwise obtains the benefit of, the avoidable transfer.

**6.16    Exemption from Certain Transfer Taxes and Recording Fees.** Pursuant to Section 1146(a) of the Bankruptcy Code, all transfers of property contemplated herein, even if accomplished after the Effective Date, are being accomplished pursuant to the Plan and shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, use tax, or other similar tax or governmental assessment to the fullest extent contemplated by Section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**6.17    Insured Claims.** Notwithstanding anything to the contrary contained herein, to the extent the Debtors have insurance with respect to any Allowed General Unsecured Claim, the Holder of such Allowed Claim shall (a) be paid any amount from the proceeds of insurance to the extent that the Claim is insured, and, (b) solely for the portion of such Claim that is not subject to coverage by the applicable insurance policy, receive the treatment provided for in the Plan for Allowed General Unsecured Claims.

**6.18    Intercompany Account Settlement.** The Debtors and the Reorganized Debtors, and their respective Affiliates, will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.

**6.19    Private Company.** It is anticipated that the Reorganized Debtors shall be private companies as of the Effective Date and shall not register any of their respective equity with the Securities Exchange Commission or list such equity on an exchange; provided, however, that, to the extent applicable, the Reorganized Debtors may implement procedures to facilitate trading of such equity, e.g., providing investors with access (on a secure website) to current information concerning the Reorganized Debtors and their subsidiaries on a consolidated basis.

**ARTICLE VII**
**<u>INTENTIONALLY OMITTED</u>**

## ARTICLE VIII
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

**8.1**   **Rejection of Executory Contracts and Unexpired Leases.**

(a)   **Automatic Rejection**. Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" contained in Exhibit 8.1 of the Plan; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by Final Order of the Bankruptcy Court as of the Effective Date, which Final Order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms herein.

The Confirmation Order will constitute a Final Order of the Bankruptcy Court approving such rejections pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under Section 502(g) of the Bankruptcy Code, subject to compliance with the requirements herein.

(b)   **Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.** To the extent not inconsistent with the Plan, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary and to the extent consistent with the Plan, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or the Reorganized Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts.

(c)   **Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases.** Unless otherwise provided by a Bankruptcy Court Final Order, any Proof of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection. Any Proof of Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed

Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(d)     **Reservation of Rights.** Notwithstanding anything to the contrary herein, prior to sixty (60) days after the Effective Date, the Debtors (or the Reorganized Debtors), may amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease, and any amended decision shall be binding on the contract counterparty.

**8.2     Assumption of Executory Contracts and Unexpired Leases.** Upon the occurrence of the Effective Date, each Executory Contract or Unexpired Lease (other than Executory Contracts or Unexpired Leases that (a) have been previously rejected by the Debtors by Final Order of the Bankruptcy Court or have been rejected by the Debtors by Final Order of the Bankruptcy Court as of the Effective Date, which Final Order becomes a Final Order after the Effective Date or (b) are the subject of a motion to reject pending as of the Effective Date) listed on the schedule of "Assumed Executory Contracts and Unexpired Leases" in Exhibit 8.1 of the Plan shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their assignee in accordance with its terms, except as modified by the provisions of the Plan or any Final Order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. With respect to each such Executory Contract and Unexpired Lease, the Debtors, shall have designated a proposed Cure, and the assumption of such Executory Contracts and Unexpired Leases may be conditioned upon the disposition of all issues with respect to such Cure. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.

(a)     **Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

(b)     **Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed.** Any and all Proof of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including hereunder, except a Proof of Claim asserting Cure amounts, pursuant to the Final Order approving such assumption, including the Confirmation Order, shall be deemed disallowed and expunged from the claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

**8.3     Indemnification Provisions.** Notwithstanding anything herein to the contrary, as of the Effective Date, the Indemnification Provisions shall be treated as though they are executory contracts and that the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Indemnification Provisions in full force) pursuant to Section 365(a) of the Bankruptcy Code. Entry of Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Indemnification Provisions.

**8.4     Insurance Policies.** Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement, any other document related to any of the foregoing or any other Final Order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release, including, but not limited to, the injunctions set forth in Section 11.6 of the Plan): (a) on the Effective Date, the Debtors shall assume and assign to the Reorganized Debtors all insurance policies except those specific insurance policies (and all agreements related thereto) that are set forth in the Plan Supplement, which will be rejected as such insurance policies may be amended or modified (such assumed insurance policies and related agreements, collectively, the "Insurance Contracts"); (b) other than as expressly set forth in this Section 8.4, nothing in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement or the Confirmation Order alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Contracts, provided, however that the Debtors or Reorganized Debtors, as applicable, shall retain the right to challenge any amounts owed under the Insurance Contracts in accordance with their terms, and the rights and obligations of the parties under the Insurance Contracts, whether or not such Insurance Contracts are executory or were in effect before or after the Petition Date, shall remain fully enforceable by the parties after the Effective Date of the Plan; (c) nothing in the Disclosure Statement, the Plan, the Plan Documents, Plan Supplement, the Confirmation Order, any prepetition administrative claim bar date order (or notice) or claim objection order alters or modifies the duty, if any, that the insurers and/or third party administrators have to pay claims covered by the Insurance Contracts in accordance with the terms of the Insurance Contracts; and (d) the automatic stay of Bankruptcy Code Section 362(a) and the injunctions set forth in Section 11.6 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (A) claimants with valid claims covered by any of the Insurance Contracts ("Insurance Claims") to proceed with their claims; (B) insurers and/or third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business and subject to the terms of the Insurance Contracts, without further order of the Bankruptcy Court, (i) all Insurance Claims, and (ii) all costs in relation to each of the foregoing; and (C) the insurers and/or third party administrators to take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Contracts.

**8.5     Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases.** With respect to each of the Executory Contracts or Unexpired Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtors, shall have designated a proposed Cure, and the assumption of such Executory Contract or Unexpired Lease shall be conditioned upon the disposition of all issues with respect to Cure. Such Cure shall be satisfied by the Debtors or their assignee, if any, by payment of the Cure in Cash within 30 days following the occurrence of the Effective Date or as

soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties, to the applicable Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure. If there is a dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors, or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors, or the Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease is made.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

(a)     **Cure Notice.** Prior to the Confirmation Hearing, and pursuant to the assumption and rejection procedures set forth in this Article VIII, the Debtors shall serve upon counterparties to such Executory Contracts and Unexpired Leases a notice ("Cure Notice") of the proposed assumption that will (i) list the applicable Cure, if any, (ii) describe the procedures for filing objections to the proposed assumption or assumption and assignment of the applicable Executory Contract or Unexpired Lease, (iii) describe the procedures for filing objections to the proposed Cure of the applicable Executory Contract or Unexpired Lease, and (iv) explain the process by which related disputes will be resolved by the Bankruptcy Court. If no objection is timely received, (x) the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption of the applicable Executory Contract or Unexpired Lease and shall be forever barred from asserting any objection with regard to such assumption, and (y) the proposed Cure Amount shall be controlling, notwithstanding anything to the contrary in any applicable Executory Contract or Unexpired Lease or other document as of the date of the filing of the Plan, and the non-Debtor party to an applicable Executory Contract or Unexpired Lease shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or the Reorganized Debtors, or the property of any of them.

(b)     **Cure Objections.** If a proper and timely objection to the Cure Notice or proposed Cure is filed by the Cure Objection Deadline, the Cure shall be equal to (i) the amount agreed to between the Debtors or Reorganized Debtors and the applicable counterparty, or, (ii) to the extent the Debtors or Reorganized Debtors and counterparty do not reach an agreement

regarding any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. Objections, if any, to the proposed assumption and/or Cure must be in writing, filed with the Bankruptcy Court and served in hard-copy form so that they are actually received by the Cure Objection Deadline.

(c) **Hearing with Respect to Objections.** If an objection to the proposed assumption and/or to the Cure is timely filed and received in accordance with the procedures set forth in Section 8.5(b), and the parties do not reach a consensual resolution of such objection, a hearing with respect to such objection shall be held at such time scheduled by the Bankruptcy Court or the Debtors or Reorganized Debtors. Objections to the proposed Cure Amount or assumption of an Executory Contract or Unexpired Lease will not be treated as objections to Confirmation of the Plan.

(d) **Reservation of Rights.** Notwithstanding anything to the contrary herein, prior to the Effective Date, the Debtors, may amend their decision with respect to the assumption of any Executory Contract or Unexpired Lease and provide a new notice amending the information provided in the applicable notice, subject to the Assumption and Rejection Procedures. In the case of an Executory Contract or Unexpired Lease designated for assumption that is the subject of a Cure Objection which has not been resolved prior to the Effective Date, the Debtors, may designate such Executory Contract or Unexpired Lease for rejection at any time prior to the payment of the Cure.

**8.6    Contracts, Intercompany Contracts, and Leases Entered into After the Petition Date.** Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtors, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms of such Executory Contract or Unexpired Lease.

**8.7    General Reservation of Rights.** Neither the exclusion nor inclusion of any contract or lease on Exhibit 8.1 of the Plan, in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any of its Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**9.1    Determination of Claims and Interests.** After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, including the Causes of Action retained pursuant to Section 6.14, except with respect to any Claim or Interest deemed Allowed under the Plan.

Except as expressly provided in the Plan or in any Final Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed by the Debtors or Reorganized Debtors or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest. All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties. For the avoidance of doubt, any Claim determined and liquidated pursuant to (a) a Final Order of the Bankruptcy Court or (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with the Plan.

Nothing contained in this Section 9.1 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Reorganized Debtors may have against any Entity in connection with or arising out of any Claim, including, without limitation, any rights under Section 157(b) of title 28 of the United States Code.

**9.2     Claims Administration Responsibility.** Except as otherwise specifically provided for in the Plan, after the Effective Date, the Reorganized Debtors shall retain exclusive responsibility for (a) administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Interests in, the Debtors, including, without limitations, (i) filing, withdrawing, or litigating to judgment objections to Claims or Interests, (ii) settling or compromising any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and (iii) administering and adjusting the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court, and (b) in coordination with the Distribution Agent and pursuant to Article X of the Plan making distributions (if any) with respect to all Claims and Interests.

**9.3     Objections to Claims.** Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be served and filed on or before the Claims Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Reorganized Debtors without further notice to parties-in-interest). Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Reorganized Debtors effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for a Holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto (or at the last known addresses of such Holders of Claims if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address), or (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

**9.4     Disallowance of Claims.** EXCEPT AS OTHERWISE AGREED, ANY PROOF OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOF OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

Nothing herein shall in any way alter, impair, or abridge the legal effect of the Bar Date Order, or the rights of the Debtors, the Reorganized Debtors, or other parties-in-interest to object to Claims on the grounds that they are time barred or otherwise subject to disallowance or modification.

All Claims of any Entity from which property is sought by the Debtors or the Reorganized Debtors under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed if (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**9.5     Estimation of Claims.** Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), without prejudice to the Holder of such Claim's right to request that estimation should be for the purpose of determining the Allowed amount of such Claim, and the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**9.6     No Interest on Disputed Claims.** Unless otherwise specifically provided for in the Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, post-petition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest. Additionally, and without limiting the foregoing, unless otherwise specifically provided for in

the Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

    **9.7**    **Amendments to Claims.** On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE X**
**PROVISIONS GOVERNING DISTRIBUTIONS**

    **10.1**    **Distributions of Interests to Holders of Allowed Lien Deficiency Claims and Allowed General Unsecured Claims.**  The provisions of this Article X shall apply to distributions and payments made to Holders of Allowed Claims and shall be subject to, as applicable, the terms of Article 4 of the Plan.

    **10.2**    **Time of Distributions.** Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions and payments under the Plan shall be made on the later of (a) the Distribution Date or (b) on the first Periodic Distribution Date that is at least 30 days after a Claim becomes Allowed; provided, however, that the Reorganized Debtors may, in their sole discretion, make one-time distributions or payments on a date that is not a Periodic Distribution Date.

    **10.3**    **Distribution Agent.** The Distribution Agent shall make all distributions and payments required under the Plan except (a) as set forth in Article 10.5 below and (b) with respect to any Holder of a Claim whose Claim is governed by an agreement and is administered by a servicer or agent, which distributions and payments shall be deposited with the appropriate servicer or agent, as applicable, who shall deliver such distributions to the Holders of Claims in accordance with the provisions of the Plan and the terms of any governing agreement.

    **10.4**    **Currency.** Except as otherwise provided in the Plan or Bankruptcy Court Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. Dollars shall be automatically deemed converted to the equivalent U.S. Dollar value using the exchange rate as of Effective Date at 4:00 p.m. prevailing Mountain Time, mid-range spot rate of exchange for the applicable currency as published in the next The Wall Street Journal, National Edition following the Effective Date.

    **10.5**    **Distributions on Account of Claims Allowed as of the Effective Date.** Except as otherwise provided in the Plan, a Final Order, or as otherwise agreed to by the relevant parties, the Distribution Agent shall make initial distributions and payments under the Plan on account of Allowed Claims on the Initial Distribution Date, subject to the Reorganized Debtors' rights to object to Claims that have not been Allowed; provided, however, that (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid

or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (ii) Allowed Priority Tax Claims shall be paid in full in Cash on the Distribution Date or in installment payments over a period not more than five years after the Petition Date pursuant to Section 1129(a)(c) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**10.6    Distributions on Account of Claims Allowed After the Effective Date.**

(a)    **No Distributions Pending Allowance.** No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed on or before the Claims Objection Deadline.

(b)    **Distributions After Allowance.** Payments and distributions to each respective Holder of a Claim on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with provisions of the Plan that govern distributions or payments to such Holder of a Claim. On the first Periodic Distribution Date that is at least 30 days following the date when a Disputed Claim becomes an Allowed Claim, the Distribution Agent shall distribute to the Holder of such Allowed Claim the distribution or payment that such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest unless required under applicable bankruptcy law; provided, however, (i) Disputed Claims that are Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (ii) Disputed Claims that are Allowed Priority Tax Claims after the Effective Date shall be paid in full in Cash on the Periodic Distribution Date that is at least 30 days after the Disputed Claim becomes an Allowed Claim or over a five-year period as provided in Section 1129(a)(9)(C) of the Bankruptcy Code with annual interest provided by applicable non-bankruptcy law.

(c)    **Special Rules for Distributions to Holders of Disputed Claims.** Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. All distributions made pursuant to the Plan on account of a Disputed Claim that is deemed an Allowed Claim by the Bankruptcy Court shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions and payments were previously made to Holders of Allowed

Claims included in the applicable Class; provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law or the Plan.

**10.7    Delivery of Distributions.**

(a)    **Record Date for Distributions.** On the Distribution Record Date, the claims register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders listed on the claims register or the most recently filed Schedules submitted by the Debtors as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim or Interest is transferred less than 20 days before the Distribution Record Date, the Distribution Agent shall make distributions and payments to the transferee only to the extent practicable and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    **Allowed Claims**. Distributions and payments to Holders of Allowed Claims shall be made by the Distribution Agent or the appropriate Servicer (i) at the addresses set forth on the Proof of Claim filed by such Holders of Claims (or at the last known addresses of such Holders of Claims if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim, (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address, or (iv) in the case of a Holder of a Claim whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

(c)    **Undeliverable Distributions.** If any distribution and payments to a Holder of a Claim is returned as undeliverable, no further distributions or payments to such Holder of such Claim shall be made unless and until the Distribution Agent or the appropriate Servicer is notified of then-current address of such Holder of the Claim, at which time all missed distributions and payments shall be made to such Holder of the Claim without interest, dividends, or accruals of any kind on the next Periodic Distribution Date. Amounts in respect of undeliverable distributions and payments shall be returned to the Reorganized Debtors until such distributions or payments are claimed.

(d)    **Reversion.** Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after such distribution shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Reorganized Debtors free of any restrictions thereon.  Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled, discharged and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, the Reorganized Debtors, or the Distribution Agent made pursuant to any

indenture or Certificate (but only with respect to the initial distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

(e)    **De Minimis Distributions**. Notwithstanding any other provision of the Plan to the contrary, the Reorganized Debtors, the Distribution Agent, and any Servicer shall not be required to make a distribution or payment on account of an Allowed Claim if (i) the aggregate amount of all distributions and payments authorized to be made on the Periodic Distribution Date in question is or has a value less than $5,000; provided that the Reorganized Debtors shall make, or cause to be made, a distribution or payment owing on a Periodic Distribution Date of less than $5,000 if the Debtors expect that such Periodic Distribution Date shall be the final Periodic Distribution Date; or (ii) the amount to be distributed to the specific Holder of the Allowed Claim on the particular Periodic Distribution Date does not both (x) constitute a final distribution to such Holder and (y) have a value of at least $50.00.

(f)    **Fractional Distributions.** Notwithstanding any other provision of the Plan to the contrary, the Reorganized Debtors, and the Distribution Agent, shall not be required to make partial distributions or distributions of payments of fractions of dollars.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**10.8    Surrender of Securities or Instruments.** As soon as practicable after the Effective Date, each Holder of a Claim shall surrender its note(s) and/or certificates to the Debtors. No distributions under the Plan shall be made for or on behalf of such Holder unless and until such note(s) and/or certificates are received by the Debtors or the loss, theft or destruction of such note(s) and/or certificates is established to the reasonable satisfaction of the applicable Debtor, which satisfaction may require such Holder to submit (a) a lost instrument affidavit and (b) an indemnity bond holding the Debtors and the Reorganized Debtors, harmless in respect of such note and distributions made thereof. Upon compliance with this Section 10.9 such Holder shall, for all purposes under the Plan, be deemed to have surrendered such Claim. Any Holder that fails to surrender such note(s) and/or certificates or satisfactorily explain its non-availability to the applicable Debtor or Reorganized Debtor within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, the Reorganized Debtors (or their property), in respect of such Claim and shall not participate in any distribution under the Plan. All property in respect of such forfeited distributions, including interest thereon, shall be promptly returned to the Reorganized Debtors, and any such security shall be cancelled.

**10.9    Compliance Matters.** In connection with the Plan and all instruments issued in connection therewith and distributions thereunder, to the extent applicable, the Debtors, Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the

Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**10.10    Claims Paid or Payable by Third Parties.**

(a)    **Claims Paid by Third Parties.** The Debtors and Reorganized Debtor shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Reorganized Debtors. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Reorganized Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(b)    **Claims Payable by Insurance Carriers.** No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the claims register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    **Applicability of Insurance Policies.** Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**10.11    Setoffs.** Except as otherwise expressly provided for in the Plan and except with respect to any DIP Facility Claims, and any distribution on account thereof, the Reorganized Debtors pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtors or the Reorganized Debtors,

as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtors of any such Claims, rights, and Causes of Action that the Reorganized Debtors may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 or otherwise.

**10.12   Allocation of Plan Distributions Between Principal and Interest.** To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

**ARTICLE XI**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

**11.1   Vesting of Assets.** Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates (including Causes of Action, but excluding property that has been abandoned pursuant to a Final Order of the Bankruptcy Court) shall vest in the Reorganized Debtors which, unless otherwise indicated in the Plan, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, except the DIP Loan until such time as the DIP Loan is paid in full. As of and following the Effective Date, the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**11.2   Discharge of the Debtors.** Pursuant to Section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or the Confirmation Order, and effective as of the Effective Date: (a) the distributions and rights that are provided in the Plan, if any, and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Causes of Action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of

Claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim, right, or Interest accepted the Plan; (b) the Plan shall bind all Holders of Claims and Interests notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under Section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the occurrence of the Effective Date.

**11.3    Compromises and Settlements.** The Plan is intended to incorporate the agreements reached and the settlement described in the Plan and Disclosure Statement. In accordance with Section 9.2 of the Plan, pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims or Interests and (b) Causes of Action that the Debtors have against other Entities up to and including the Effective Date. After the Effective Date, any such right shall pass to the Reorganized Debtors, and as contemplated in Section 11.1 of the Plan, without the need for further approval of the Bankruptcy Court. Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan or any distribution to be made on account of an Allowed Claim, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that any such compromise or settlement is in the best interests of the Debtors, its Estate, and Holders of Claims and Interests, and is fair, equitable, and reasonable.

**11.4    Exculpation and Limitation of Liability.** Subject to Section 11.5 of the Plan, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or intentional fraud to the extent imposed by applicable non-bankruptcy law.  Subject to the foregoing limitations, the Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, as applicable, pursuant to the Plan and, therefore, are not and shall not be liable at any time for claims arising after the Petition Date and before the Confirmation Date for the violations of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**11.5    Exclusions and Limitations on Exculpation, Indemnification, and Releases.** Notwithstanding anything in the Plan to the contrary, no provision of the Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification, or release provision, shall modify, release, or otherwise limit the liability of any Entity not specifically released or exculpated hereunder or pursuant to a Final Order of the Bankruptcy Court, including, without limitation, any Entity who is a co-obligor or joint tortfeasor of a Released Party or who is otherwise liable under theories of vicarious or other derivative liability.

**11.6    Injunction.** Subject to Section 11.5 of the Plan, the satisfaction, release, and discharge pursuant to this Article XI shall act as an injunction against any Entity commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released or to be released, exculpated or to be exculpated, including any Exculpated Claim, or discharged under the Plan or pursuant to the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by Sections 524 and 1141 thereof.

**11.7    Subordination Rights.**

(a)    Except as otherwise provided in the Plan, the allowance, classification and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise and all Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

(b)    Except as otherwise provided in the Plan (including Plan Exhibits), the Confirmation Order or a Final Order of the Bankruptcy Court, the right of the Debtors or the Reorganized Debtors to seek subordination of any Claim or Interest pursuant to Section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a subordinated Claim or Interest at any time shall be modified to reflect such subordination; provided, however, that the Debtors and the Reorganized Debtors shall not seek subordination of any DIP Facility Claim or Second Lien Claim, and such Claims are Allowed in full and not subject to any subordination of any kind. Unless the Plan (including Plan Exhibits) or the Confirmation Order otherwise provide, no distributions shall be made on account of a Claim subordinated pursuant to this Section 11.7(b) unless ordered by the Bankruptcy Court.

**11.8    Protection Against Discriminatory Treatment.** Consistent with Section 525 of the Bankruptcy Code and paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, entitlement, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom such the Reorganized Debtors has been associated, solely because the Debtors has been a debtor under Chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**11.9    Recoupment.** In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**11.10    Release of Liens.** Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates except those arising pursuant to the DIP Loan and the Exit Loan shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and its successors and assigns.

**11.11    Reimbursement or Contribution.** If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding Section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE XII
## CONDITIONS PRECEDENT

**12.1    Conditions to Confirmation.** The following are conditions precedent to the Confirmation of the Plan, each of which may be satisfied or waived in accordance with Section 12.3 of the Plan:

(a)    the Bankruptcy Court shall have entered the Disclosure Statement Order;

(b)    the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors, the Reorganized Debtors, the DIP Lender and the Exit Lender.

**12.2   Conditions to the Effective Date of the Plan.** The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.3 of the Plan:

(a)    the Bankruptcy Court shall have entered the Disclosure Statement Order, and such order shall be a Final Order;

(b)    the Bankruptcy Court shall have entered the Exit Financing Order approving the Exit Financing on a super priority basis pursuant to Sections 364(c)(1)(2) and (d)(1) and shall have specifically found, by competent and substantial evidence, that the Exit Lender is extending credit to the Debtors in "good faith" consistent with the provisions of Section 364(e) of the Bankruptcy Code, all in a form satisfactory to the Exit Lender and consistent with the provisions of Section 6.3 of the Plan and applicable Law, and such order shall be a Final Order.

(c)    the Bankruptcy Court shall have entered the Confirmation Order, and which Order has not been modified, stayed, vacated, amended or reversed and as to which no reargument, rehearing or reconsideration is pending and the time for the filing such reargument, rehearing or reconsideration requests has expired.

(d)    all Plan Transaction Documents shall be in form and substance reasonably satisfactory to the Debtors, the Exit Lender and the Reorganized Debtors;

(e)    the organizational documents of the Reorganized Debtors as contemplated herein shall be in form and substance reasonably satisfactory to the Debtors and the Reorganized Debtors, shall have been adopted and (where required by applicable law) filed with the applicable authorities of the relevant jurisdictions of organization and shall have become effective in accordance with such jurisdiction's corporation or limited liability company laws;

(f)    the Exit Financing has been funded and made available to the Debtors and the Reorganized Debtors;

(g)    all authorizations, consents, certifications, approvals, rulings, no action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement the Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on the Reorganized Debtors;

(h)    the New Boards and senior management shall have been selected as contemplated by the Plan;

(i)    all other documents and agreements necessary to implement the Plan on the Effective Date shall have been executed and delivered and all other actions required to be taken in connection with the Effective Date shall have occurred in form and substance and in a manner reasonably satisfactory to the Debtors and the Reorganized Debtors; and

(j)     all statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

**12.3     Waiver of Conditions Precedent.** The conditions set forth in Sections 12.1 and 12.2 may be waived, in whole or in part, by agreement of (a) the Debtors; (b) the Reorganized Debtors; and (c) the Exit Lender, without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing.

**12.4     Notice of Effective Date.** The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in Section 12.2 of the Plan have been satisfied or waived pursuant to Section 12.3 of the Plan.

**12.5     Effect of Non-Occurrence of Conditions to Consummation.** If prior to consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any Final Order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

(a)     resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtors' amendment, modification, or supplement after the Effective Date, pursuant to Article VIII of the Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(b)     adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, the Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)      ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)      allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including hearing and determining any and all objections to the allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and the resolution of request for payment of any Administrative Claim;

(e)      hear and determine or resolve any and all matters related to Causes of Action;

(f)      enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

(g)      issue and implement orders in aid of execution, implementation, or consummation of this Plan;

(h)      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)      hear and determine all applications for allowance of compensation and reimbursement of Professional Claims under the Plan or under Sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(j)      determine requests for the payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

(k)      adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(l)      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Exit Loan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan and disputes arising in connection with any Entity's obligations incurred in connection with the Plan;

(m)      hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

(n)      hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(o)      resolve any matters relating to the pre- and post-confirmation sales of the Debtors' assets;

(p)      hear any other matter not inconsistent with the Bankruptcy Code;

(q)      hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(r)      enter a Final Decree closing the Chapter 11 Cases;

(s)      enforce all orders previously entered by the Bankruptcy Court;

(t)      hear and determine all matters relating to any Bankruptcy Code Section 510(b) Claims.

All of the foregoing applies following the Effective Date; provided, that from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of the Plan that were subject to its jurisdiction prior to the Confirmation Date; provided, further, that the Bankruptcy Court shall not have nor retain exclusive jurisdiction over any post-Effective Date agreement. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1    Binding Effect.** Upon the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns.

**14.2    Payment of Statutory Fees.** All fees payable pursuant to Section 1930 of title 28 of the United States Code, as of the entry of the Confirmation Order as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.   The Reorganized Debtors shall continue to pay fees pursuant to Section 1930 of title 28 of the United States Code until the Chapter 11 Cases are closed by entry of the Final Decree; provided however, and following the Effective Date the Reorganized Debtors reserve the right to seek a judicial determination that the payments and distributions made by the Reorganized Debtors in the ordinary course of business or made pursuant to and in accordance with the Plan are not "disbursements" within the meaning of 28 U.S.C. Section 1930(a)(6) and should not be used in calculating or determining the fees owing to the United States trustee following the Effective Date.

**14.3    Payment of Certain Additional Professional Fees.** To the extent not paid prior to the Effective Date, on the Effective Date, the Reorganized Debtors shall pay all obligations

required to be paid under the DIP Facility Order and the Exit Loan in Cash until such obligations are satisfied in full.

**14.4    Modification and Amendments.** The Debtors, may alter, amend, or modify the Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

**14.5    Confirmation of the Plan.** The Debtors request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. The Debtors reserve the right to amend the Plan, to any extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**14.6    Additional Documents.** On or before the Effective Date, the Debtors, may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan.

**14.7    Revocation, Withdrawal, or Non-Consummation.**

(a)    **Right to Revoke or Withdraw.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date and file subsequent chapter 11 plans.

(b)    **Effect of Withdrawal, Revocation, or Non-Consummation.** If the Debtors revoke or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise approved as part of the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void in all respects. In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**14.8    Notices.**    After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

**If to the Debtors:**

The Aspen Club & Spa, LLC
1450 Crystal Lake Road
Aspen, Colorado 81611

Aspen Club Redevelopment Company, LLC
1450 Crystal Lake Road
Aspen, Colorado 81611

**with a copy to:**

Markus Williams Young & Hunsicker LLC
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203
Attn: James T. Markus
**If to the Office of the United States Trustee:**

Office of the U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO 80294

    **14.9     Term of Injunctions or Stays.** Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

    **14.10   Closing of Chapter 11 Cases and Final Decree.** Thirty (30) days after the Effective Date or as soon as possible thereafter and upon "substantial consummation" as defined in 11 U.S.C. § 1101(2), the Court will close the Debtors' Chapter 11 Cases and enter a Final Decree. While the Chapter 11 Cases are closed and during administration of the Plan, the injunction under 11 U.S.C. §§ 524(a) and 1141(d)(1) will remain in effect. Upon completion of all payments under the Plan, the Reorganized Debtors may file a Notice of Completion of Plan Payments accompanied by a certificate of service showing service upon all creditors and parties-in-interest, and the Chapter 11 Cases will be automatically re-opened pursuant to 11 U.S.C. § 350 with the payment of the applicable fee.

    **14.11   Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Colorado shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as

otherwise set forth in those agreements, in which case the governing law of such agreements shall control). Corporate governance matters shall be governed by the laws of the state of incorporation of the Reorganized Debtors.

**14.12  Entire Agreement.** Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**14.13  Severability.** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (c) non-severable and mutually dependent.

**14.14  No Waiver or Estoppel.** Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors' Committee and/or its counsel, or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**14.15  Conflicts.** In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern. In the event that the provisions of the Plan and the provisions of the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

Dated September 16, 2019; Amended November 22, 2019 and January 28, 2020; Modified February 27, 2020

Respectfully submitted,

THE ASPEN CLUB & SPA, LLC


*/s/Michael Fox*
Michael Fox, Manager

ASPEN CLUB REDEVELOPMENT COMPANY, LLC


_/s/Michael Fox_____
Michael Fox, Manager